Tafford E. OLTZ, Plaintiff,

v.

**ST. PETER'S COMMUNITY HOSPITAL, Defendant.**

**No. CV 81–271–H–RES.**

United States District Court,
D. Montana,
Helena Division.

Jan. 29, 1987.

Urban Roth, Poore, Roth & Robinson, Butte, Mont., C. Richard Anderson, Susan M. Jenkins, Quinn, Racusin, Jenkins and Ruttenberg, Washington, D.C., for plaintiff.

Michael J. Mulroney, Luxan & Murfitt Helena, Mont., Dan Bushnell, Kirkton, McConkie & Bushnell, Salt Lake City, Utah, for defendant.

## ORDER

RUSSELL E. SMITH, District Judge.

This antitrust action was tried to a jury, and in a bifurcated trial, the jury found the defendant liable and then assessed the actual damages for loss of income to the date of trial at $212,182.00 and damages for loss of future income at $209,649.00.

Defendant has moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial. The motion for judgment notwithstanding the verdict is denied. The motion for a new trial is granted on the damages issue only.

### A. *Background*

Plaintiff is, as is his wife, L.K. Oltz, a nurse anesthetist; that is, a registered nurse permitted under the law of Montana to give anesthetics. In 1975, at the request of the defendant, St. Peter's Community Hospital (St. Peter's), the plaintiff moved to Helena, Montana to practice his profession. There was a written agreement as follows:

### AGREEMENT

It is hereby agreed between St. Peter's Hospital and T.E. Oltz and L.K. Oltz that T.E. Oltz and L.K. Oltz agree to provide anesthesia services as required by St. Peter's Hospital and its Medical Staff. It is further agreed that St. Peter's Hos-

pital will pay T.E. Oltz and L.K. Oltz for services provided as set forth in the addendum to this Agreement. This Agreement shall be in effect as of November 22, 1974 and shall continue on a month to month basis until otherwise terminated by notice in writing by either party. T.E. and L.K. Oltz will provide malpractice insurance and agree to provide a certificate thereof. It is agreed that T.E. and L.K. Oltz are independent contractors and not employees of St. Peter's Hospital.

Date: February 12, 1975    Howard Purcell
Date: February 10, 1975    Tafford Oltz
                           LaRayne Oltz

ADDENDUM TO AGREEMENT BETWEEN ST. PETER'S HOSPITAL AND T.E. and L.K. Oltz.

*Terms of Payment for Services*

T.E. and L.K. Oltz Anesthesia Service will bill St. Peter's Hospital directly for anesthesia service provided by them. This billing will take place as soon as possible, after anesthesia is given, so as not to place any problems billing either with St. Peter's Hospital or the patient. In consideration of being paid directly by St. Peter's Hospital and not the patient, T.E. and L.K. Oltz Anesthesia Service agrees to accept 90% (ninety percent) of all bills submitted by them to St. Peter's Hospital for payment.

Date: February 12, 1975    Howard Purcell
Date: February 10, 1975    Tafford Oltz
                           LaRayne Oltz

On April 30, 1980, St. Peter's gave written notice that it had entered into a contract with a group of anesthesiologists which gave the group an exclusive right to furnish anesthetic services in the hospital and that plaintiff's contract would be terminated July 14, 1980.

Thereafter, this action was filed against St. Peter's and Doctors Bloomstrom, James, Thompson, and Claassen. Early in the litigation, Claassen settled and the case was dismissed as to him. On October 8, 1986, the action was dismissed as to the defendant Thompson. On October 20, 1986, the case was dismissed as to Drs. Bloomstrom and James. The settling defendants paid to the plaintiff the sum of $462,500.00.

St. Peter's, in support of its motions, argues that:

I. The verdict finding a conspiracy was not supported by the weight of the evidence; II. the court erred in failing to instruct the jury as to the relevant product and geographic markets; III. the verdict was the product of passion and prejudice on the part of the jury; IV. the court erred in admitting statements of the defendant doctors; V. that the closing argument of counsel for plaintiff as to the incomes of the defendant doctors following the date of the exclusive contract was in error.

B. *The motion for judgment notwithstanding the verdict*

I.

The jury finding that there was a conspiracy the purpose of which was to cause St. Peter's to grant an exclusive contract and to cancel plaintiff's billing contract is supported by the evidence. Plaintiff was a competitor of the defendant doctors and each case that plaintiff handled reduced the number of cases available for other doctors. The evidence consisted of statements made by the doctors, letters between them, and letters from various doctors to the Board of Trustees. This direct evidence was supported by circumstances from which the jury tended to support the existence of a conspiracy.

St. Peter's makes an extensive argument to the effect that the hospital had no economic motive to grant an exclusive contract or to cancel the billing contract and that hence, there is not the kind of parallel conduct which would warrant the inference of conspiracy. Assuming that to be true, still the finding of a conspiracy here does not depend upon inferences to be drawn from parallel conduct. There was direct evidence.

There was abundant evidence that the plaintiff and the anesthesiologists had been feuding for a substantial period of time and that just prior to April, 1979, all

the doctors had threatened to quit unless plaintiff's status as a freelance operator was changed. The minutes of the trustee's meeting on April 11, 1979, read in part:

> Mrs. Winterburn said the ad hoc committee on anesthesia had submitted some recommendations to the Board but the Board has not taken any definite action. It has now been learned that one of the anesthesiologists is leaving for Kalispell, another is looking in the State of Washington, and a third is considering retirement. There is real concern the hospital will be receiving applications from nurse anesthetists and eventually it would be difficult to recruit anesthesiologists. Clara Mattern, the Pittsburg attorney who has been advising the hospital, felt this would be a poor solution. If several of the anesthesiologists leave the community, the quality of anesthesia services would deteriorate. Overall quality of care in the hospital would decline in (sic) no anesthesiologists could be recruited to replace those who are leaving.

From this, the jury was warranted in concluding that the board of trustees was aware of the pressure being applied by the anesthesiologists, bowed to it, and thereby joined the conspiracy. The jury was instructed that the fact that the hospital was coerced by economic threats was not an excuse. In this connection, *See United States v. Paramount Pictures, Inc.,* 334 U.S. 131, 161, 68 S.Ct. 915, 931, 92 L.Ed. 1260 (1948), *Flintkote Company v. Lysfjord,* 246 F.2d 368, 375 (9th Cir.1957), *Linseman v. World Hockey Association,* 439 F.Supp. 1315, 1321–22, (D.Conn.1977).

I am aware that the result in this case is unique, but it is the only case I have found where an exclusive contract was brought about by a conspiracy. In my opinion, St. Peter's might have done everything that it did do, if it had done so in the absence of a conspiracy.

## II

In my opinion, the court's failure to give instructions on the product and geographic market was not in error. St. Peter's Shodair, and the Veteran's Hospital are in Hel-

ena, but only St. Peter's is available to the general public. It was stipulated that it is the only hospital equipped to do general surgery and that it has a market share of 84%. As a practical matter, a person desiring the services of a Helena physician or obstetrician must go to St. Peter's and an anesthetist or anesthesiologist working to serve the Helena physicians and obstetricians must work at St. Peter's.

■ When the capacity of a defendant to control prices or exclude competition is in question, it may be necessary to determine whether defendant has market power as to a given product in a given area. In such cases, the relevant market must be ascertained. That was the case in *Jefferson Parish Hospital v. Hyde,* 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984). In that case, there were 20 hospitals in the New Orleans metropolitan area and 70% of the patients living in the Jefferson Parish where defendant was located went to other hospitals. When, as here, a defendant has a monopoly in a given area further inquiry becomes unnecessary. *See United States v. Grinnell Corp.,* 384 U.S. 563, 576, 86 S.Ct. 1698, 1706, 16 L.Ed.2d 778 (1966).

## III

■ Defendant argues that the verdict was the product of the jury's passion and prejudice. It is true that after a trial lasting as long as this one did, the jury returned its verdict on the issues very quickly. The plaintiff's evidence on the liability issue was, in my opinion, very strong and in light of that, I am unable to ascribe the jury verdict to passion or prejudice. On the evidence which was submitted to the jury, the amount of the verdict does not appear to me to be the result of passion or prejudice.

## IV

■ After a cautionary objection of the defendant, the court admitted the declarations of the defendant doctors. In my opinion, this was not error. When the declarations were first admitted, the court advised the jury that the declarations were not evidence against the defendant, St. Peter's

Hospital, unless the jury first determined that St. Peter's joined the conspiracy. That admonition was repeated in the instructions given. Thus, the jury was told:

If it appears from a preponderance of the evidence that a conspiracy exists and that the defendant was a member of that conspiracy, then the statements made and the acts done by any member of the conspiracy may be considered by you as applying to all members of the conspiracy. This is true even though the statements and acts may have occurred in the absence and without the knowledge of all the members; provided, such statements and acts were knowingly made and done during the continuance of the conspiracy and in furtherance of some object or purpose of the conspiracy.

\* \* \* \* \* \*

However, in determining whether the defendant was a member of the conspiracy, you should consider only its acts and statements. It cannot be bound by the acts or declarations of other participants until it is established that a conspiracy existed, and that it was one of its members.

The rule in criminal cases is that ex parte declarations of co-conspirators are admissable once it is shown by independent evidence that a conspiracy exists and that the defendant participated in it. *See Devitt and Blackmar,* Federal Jury Practice and Instructions § 27.05. The rule is the same in civil cases. *Hitchman Coal and Coke Co. v. Mitchell,* 245 U.S. 229, 249, 38 S.Ct. 65, 71, 62 L.Ed. 260 (1917).

## V.

■ The court admitted evidence of the earnings of Dr. James for the period following plaintiff's termination and then counsel for plaintiff in argument told the jury that ⅔ of the salary of Dr. James would constitute a yardstick by which it could measure the amount of money that the plaintiff would have made had he continued at St. Peter's. It is somewhat paradoxical that plaintiff's counsel should use what plaintiff claimed to be monopoly created earnings as a measuring rod for the

amount that he might have earned in a market free from monopoly, but, if the admission of the evidence and the references to it in argument were in error, they were not sufficient in my mind to warrant a new trial.

### C. *The motion for a new trial*

■ Although I am unable to say that the verdict was the product of passion and prejudice, I do think that the damages awarded were excessive. This was caused by my error in granting a motion in limine which excluded the earnings of L.K. Oltz, plaintiff's wife, after the year 1980. I think that there was evidence from which a jury might have found that the plaintiff and L.K. Oltz were a joint venture, and that in determining the amount of damages, the jury should have been allowed to consider the amounts earned by L.K. Oltz in the years after 1980.

The billing contract provided that Tafford E. Oltz and L.K. Oltz should bill anesthesia services to St. Peter's directly, and that T.E. Oltz and L.K. Oltz Anesthesia Services agreed to accept 90% of all bills as payment. L.K. Oltz did a small amount of work at St. Peter's but was largely employed by hospitals in cities other than Helena, Montana. T.E. and L.K. Oltz filed joint tax returns. In those returns, the deductions from gross income were juggled. Thus, in the year 1979, in which the federal income tax return showed business income of $51,891.00, T.E. Oltz claimed deductions of $44,968.00 (including $9,839.00 in car expense) while L.K. Oltz who did the traveling claimed nothing. At the trial, plaintiff adjusted the figures shown on the return to show that he had made a greater income than that disclosed by the return. It plainly appears from the evidence that plaintiff and L.K. Oltz jointly owned the property which they acquired and are jointly liable for their debts. If they were not joint venturers as a matter of law, there was certainly a fact question for the jury. Should a jury find them to be joint venturers, then the question would be how much T.E. Oltz, as a joint venturer, was damaged by the loss of his job?

For the years 1977, 1978 and 1979, the last three years in which both T.E. and L.K. Oltz lived in Helena, their net business income, including wages or salaries, as shown by the Montana tax returns was respectively $109,223.00 and $63,118.00 for a total of $172,341.00. But in the years 1982, 1983, and 1984, the first three full years in their new location on the faculty at Iowa State University, their federal tax returns showed total joint wages or salaries of $247,959.00.[1] In addition to these amounts, both T.E. and L.K. Oltz received fringe benefits of substantial value and from time to time, received consulting fees. If the whole picture of T.E. and L.K. Oltz' income was portrayed, it might show that plaintiff was not damaged or, if damaged, not in the amount of the verdict.

■ There is an additional reason why, in my opinion, the L.K. Oltz earnings are relevant. Even if they are not treated as joint venturers, they are husband and wife. They have moved to jobs where their joint income is substantial. Now, they can live in the same town and work at the same place. Now, she is spared the burden of traveling. The amount of damages to be awarded is dependent on the length of time that plaintiff would have remained at St. Peter's. Plaintiff's expert calculated that as his work expectancy. But, if the market for nurse anesthetists as a couple was such that plaintiff could get a place for himself and his wife at the rate of pay they are now getting within a matter of months, certainly a jury should be allowed to consider that in determining whether plaintiff would have continued practicing at St. Peter's.

■ In my opinion, although the defendants did not object to the court's rulings, I believe the rulings were wrong and as a result, an injustice was done. I believe the law to be that where the court thinks that an injustice was done, it has the power to grant a new trial regardless of the reason of the error. *See Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249

F.2d 246, 256 (9th Cir.1957), *Fenner v. Dependable Trucking Co.*, 716 F.2d 598, 602 (9th Cir.1983).

IT IS THEREFORE ORDERED that the motion for judgment notwithstanding the verdict is denied.

IT IS FURTHER ORDERED that the defendant is granted a new trial on the damages issue only.

I am of the opinion that both the order denying the motion for judgment notwithstanding the verdict and the order granting a new trial as to damages only involve controlling questions of law as to which there is a substantial ground for a difference of opinion and that an immediate appeal from both orders may materially advance the ultimate termination of the litigation.

---

1. In 1980, plaintiff worked both in Helena and St. Croix, and in 1981, plaintiff worked both in St. Croix and Iowa. Because of these changes of location, it is possible that there were substantial losses in those years.