Tafford E. **OLTZ,** Plaintiff–Appellant–Cross–Appellee,

v.

**ST. PETER'S COMMUNITY HOSPITAL,** Defendant–Appellee–Cross–Appellant.

Nos. 92–35538, 92–35562.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 2, 1994.

Decided March 28, 1994.

Urban L. Roth, Poore, Roth & Robinsin, Butte, MT, Daniel S. Koch, Doyle & Bachman, Washington, DC, for plaintiff-appellant-cross-appellee.

Sam E. Haddon, Boone, Karlberg & Haddon, Missoula, MT, Karen Owens, Lewis and Roca, Phoenix, AZ, for defendant-appellee-cross-appellant.

Before: WRIGHT, REAVLEY,* and LEAVY, Circuit Judges.

REAVLEY, Circuit Judge:

In *Oltz v. St. Peter's Community Hosp.*, 861 F.2d 1440 (9th Cir.1988) we remanded this antitrust case for a new trial on damages. The trial court then determined that Oltz could not prove damages greater than the offsetting settlement sums he had already received and granted St. Peter's Motion for Summary Judgment on damages. We reverse and remand for trial.

## I. Background

Because we gave a detailed explanation of the facts in the former appeal, 861 F.2d at 1442–44, we give only a brief description here.

Tafford Oltz, a nurse anesthetist, entered into a billing contract with St. Peter's Community Hospital, the provider of 84% of the surgical services in the rural community of Helena, Montana. M.D. anesthesiologists at the hospital disliked competing with Oltz because he charged lower rates and many of the doctors preferred his services. In order to squeeze Oltz out of the market, the M.D. anesthesiologists obtained an exclusive contract with St. Peter's on April 29, 1980, resulting in the cancellation of Oltz's billing contract.

With the M.D. anesthesiologists firmly ensconced, Oltz was left with the vexing choice of either becoming a salaried employee of the doctor group in a position paying much less than he was making, or leaving Helena and finding another job. Oltz and his wife chose to leave Helena in July 1980, and he was employed by the University of Iowa two months later.

In June 1982, St. Peter's and the doctor group renegotiated the exclusive contract because the term of the original contract had expired.

## II. Procedural History

Oltz filed suit against the doctors and St. Peter's, alleging violations of § 1 of the Sherman Act, 15 U.S.C. § 1. The court bifurcated the trial on liability and damages. One week before the liability trial, the doctors settled with Oltz for $462,500, leaving St. Peter's as the sole defendant. In the liability trial, the jury found that St. Peter's conspired with the doctor group to enter into an exclusive contract and to terminate Oltz's billing contract. St. Peter's did not fare any better in the damage trial. The jury awarded Oltz $212,182 in lost income to the date of trial (November 5, 1986) and $209,649 in lost future income. After the entry of judgment, Judge Russell Smith, *sua sponte,* ordered a new trial on damages because he considered the jury's award excessive. Judge Smith thought that Mr. and Mrs. Oltz might have been a joint venture (Mrs. Oltz was also a nurse anesthetist), and he feared that his original granting of Oltz's unopposed Motion in Limine, which excluded the introduction of Mrs. Oltz's income after 1980, may have contributed to this excessive award. *Oltz v. St. Peter's Community Hosp.*, 656 F.Supp. 760, 764–65 (D.Mont.1987).

St. Peter's appealed the judgment on liability, and Oltz appealed the order of a new trial on damages. In *Oltz,* 861 F.2d 1440, we affirmed the court's judgment on liability and the court's order for a new trial on damages. On remand, the case was transferred to Judge James Battin.

A few months before the damages trial, the parties presented Judge Battin with various pre-trial motions. After considering the evidence introduced during the previous trials and additional discovery responses, Judge Battin concluded that there was no evidence supporting a joint venture between Mr. Oltz and his wife. He ruled that Mrs. Oltz's income would be excluded from the damages trial. St. Peter's moved the court to exclude all damages after June 26, 1982, the date St. Peter's and the doctor group renegotiated their exclusive arrangement. Deciding that Oltz failed to prove that the renegotiated

* Honorable Thomas M. Reavley, Senior United States Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation.

contract also violated the antitrust laws, Judge Battin ruled that Oltz's damages ended on June 26, 1982. Because Oltz conceded that he could not prove damages greater than the offsetting settlement sums he had received from the doctors, his claim for damages was disposed of by summary judgment.

Judge Shanstrom presided over Oltz's request for attorney's fees, and he awarded Oltz attorney's fees of $383,713.45, well below the $880,000 requested, and costs of $9,138.54, also below the $79,000 requested. Because Oltz was denied damages from St. Peter's, Judge Shanstrom refused to award attorney's fees or costs for any work performed after the 1986 liability trial. Oltz appeals the restriction on his proof of damages and the court's award of attorney's fees.

## III. Analysis

### A. Limitation on proof of damages

The trial court limited Oltz's proof of damages to June 26, 1982 because Oltz did not prove in the first trial that the renegotiated contract between St. Peter's and the M.D. anesthesiologists violated the antitrust laws. Without such proof, the June 26, 1982 agreement would be legal because an exclusive contract, standing alone, does not violate § 1 of the Sherman Act. *Oltz*, 861 F.2d at 1449. To succeed under a continuing conspiracy theory, Oltz had to prove that each successive contract violated the antitrust laws. *See generally, Flintkote Co. v. Lysfjord*, 246 F.2d 368, 394–95 (9th Cir.), *cert. denied*, 355 U.S. 835, 78 S.Ct. 54, 2 L.Ed.2d 46 (1957).[1]

Oltz, however, did introduce evidence showing that the initial exclusive contract, which violated the antitrust laws, destroyed his practice in Helena. In the first appeal of this case, we noted:

> Ample evidence supports Oltz's claim that the M.D. anesthesiologists and St. Peter's conspired to terminate his billing contract as well as to enter the exclusive contract. Thus, the jury could justifiably have concluded that the goal was, at least partially, the elimination of Oltz as a direct competitor of the anesthesiologists.

*Oltz*, 861 F.2d at 1449. Because the initial conspiracy destroyed his practice, Oltz is entitled to seek recovery for all damages resulting from the destruction of his business in Helena. *See Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*, 773 F.2d 1506, 1511 & n. 5 (9th Cir.1985). The legality of any subsequent agreements between the conspirators is irrelevant, because the April 29, 1980 contract severed the lifeline to Oltz's thriving practice in Helena.

### B. Reinstatement of damage award

Because Judge Battin ruled that Mr. Oltz and his wife were not a joint venture, Oltz requests that we reinstate the original damage award. While it is true that Judge Smith believed that the exclusion of Mrs. Oltz's income led to the excessive verdict, we did not affirm his order for a new trial on that basis. Instead, we concluded that Judge Smith did not abuse his discretion in concluding that the damage award was excessive because the evidence on Mr. Oltz's income could have misled the jury. *Oltz*, 861 F.2d at 1452. We stand by the original decision and remand this case for a new trial on damages.

---

1. St. Peter's relies heavily upon *Flintkote* to support the district court's limitation on Oltz's proof of damages. But in *Flintkote*, the supplier's refusal to sell tile to the plaintiffs only increased the plaintiffs' cost for tile; it did not destroy the plaintiffs' business. *Flintkote*, 246 F.2d at 394–96 (distinguishing the facts from a destruction of business case). Here, by entering the conspiracy to cancel Oltz's billing contract, St. Peter's and the M.D. anesthesiologists ran Oltz out of town. Oltz's professional practice was destroyed in Helena (the relevant market), and he is entitled to the resulting damages.

   St. Peter's argues that Oltz can only proceed under a continuing conspiracy theory because his business was not destroyed; he continues to practice as a nurse anesthetist at the University of Iowa. This argument, followed to its logical conclusion, prevents a professional's practice from ever being destroyed because the individual would retain his professional credentials even after being forced out of a community in which he set up a thriving practice. We reject this provincial position. Oltz's practice was geographically limited by the service area of St. Peter's. Once the conspirators drove him out of the hospital that provides 84% of the surgical services in the rural community of Helena, he had nowhere to turn. True, he continues to practice as a nurse anesthetist in another state, but that does not negate the fact that his practice in Helena was destroyed.

## C. Attorney's Fees

Because of our decision to reverse and remand, Oltz's appeal regarding attorney's fees is moot.

REVERSED and REMANDED.