716 F.2d 598
 13 Fed. R. Evid. Serv. 1558
 John FENNER, Plaintiff/Appellee,
v.
DEPENDABLE TRUCKING COMPANY, INC., a California corporation,
Federated Department Stores, Inc., a Delaware
corporation, and Martin Lemmons,
Defendants/Appellants.
 Nos. 81-5752, 81-5777.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 2, 1982.
Decided Sept. 9, 1983.
Dissenting Opinion Sept. 28, 1983.
 
 Norby & Brodeur, Torrance, Cal., Horvitz & Greines, Ellis J. Horvitz, Marilyn L. Hoffman, Encino, Cal., for Dependable Trucking Co.
 Charles H. Carpenter, Los Angeles, Cal., for Federated Dept. Stores.
 Richard A. Caplan, Long Beach, Cal., for plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before CHAMBERS, ROBB,* and ALARCON, Circuit Judges.
 ALARCON, Circuit Judge:
 
 
 1
 Dependable Trucking Company, Inc., and Martin Lemmons, (hereinafter Dependable) and Federated Department Stores dba Ralphs (hereinafter Ralphs) appeal from a judgment entered by the district court after denial of their motion for a new trial.
 
 
 2
 We are asked to determine whether the district court denied appellants a fair trial by refusing to continue the trial because of the unavailability of a material witness. We are also asked to decide whether the district court abused its discretion in denying a motion for a new trial after finding that the jury had ignored the weight of the evidence on the question of liability and had awarded excessive damages. We reverse and remand.
 
 I. ISSUES ON APPEAL
 
 3
 1. Whether the district court denied Dependable and Ralphs a fair trial on the issue of damages by refusing to continue the trial until their expert witness would be available to testify.
 
 
 4
 2. Whether the district court should have ordered a new trial on the issue of liability upon finding that the jury verdict was against the weight of the evidence.
 
 
 5
 3. Whether the district court should have ordered a new trial on damages upon finding that the verdict was excessive.
 
 
 6
 4. Whether the district court erred in admitting the hearsay statement of a Ralphs' employee over Dependable's objection.
 
 II. PERTINENT FACTS
 
 7
 John Fenner, a truck driver, brought this diversity action seeking damages for injuries he sustained in an accident involving a truck driven by Martin Lemmons (an employee of Dependable Trucking Co.) at Ralphs' loading facility in Compton, California. Fenner alleged that as a result of the accident he suffered permanent brain damage.
 
 
 8
 Before trial began on July 7th, counsel for Dependable and Ralphs informed the court that their expert witness, a neurosurgeon, would not be available until July 20th and requested that the court "trail" the case. The court did not rule on this motion. Instead the trial judge indicated that "we will work that out."
 
 
 9
 Trial began on July 7th. On July 10th, Fenner's counsel introduced a CAT scan which had been taken during trial.[1] According to Fenner's expert, this CAT scan showed that Fenner had suffered permanent brain damage.
 
 
 10
 On July 15th, the 4th day of trial, the court announced that due to its pressing court calendar it would conclude the trial the following day. As a result Dependable and Ralphs were unable to present the testimony of their expert neurosurgeon.
 
 
 11
 The jury returned a verdict for Fenner in the amount of $400,270.
 
 
 12
 Dependable and Ralphs moved for a judgment notwithstanding the verdict or in the alternative for a new trial. At the hearing on these motions, the trial judge stated that (1) the jury's verdict was contrary to the weight of the evidence on the question of liability and (2) the jury's award of damages was excessive. The court denied Dependable and Ralphs' motions and ordered a remittitur of $80,054. The court further advised counsel that judgment would be entered for the full amount of the verdict unless Dependable and Ralphs agreed to the remittitur and waived their right of appeal. Fenner accepted the reduced amount. Dependable and Ralphs refused to accept the remittitur. The court entered judgment for $400,270.00.
 
 III. ANALYSIS
 A. Denial of a Fair Trial
 
 13
 Dependable and Ralphs contend that they were denied a fair trial when the court refused to continue the trial to allow their expert witness to testify.
 
 
 14
 On July 7th, the date set for trial, Dependable and Ralphs requested a continuance. The court was advised that their expert witness would not be able to testify until July 20th. The following colloquy ensued:
 
 
 15
 Counsel for Dependable: Just a suggestion that Tuesday would be better because my neurological surgeon is not going to be back until Monday. I'm not sure what his calendar looks like. He would be available to talk to me on Monday. They have a psychologist who we deposed two weeks ago. I'd like to have a chance to talk to my neurological surgeon before I put him on.
 
 
 16
 The Court: Well sure. When is he due back?
 
 
 17
 Counsel for Dependable: The 20th of July.
 
 
 18
 The Court: All right. We will work that out.
 
 
 19
 The trial commenced on July 7. A recess was taken on July 10. Proceedings resumed on Wednesday, July 15. On that date the court announced that the trial would have to be concluded on the following day. The record reflects the following discussion:
 
 
 20
 Counsel for Dependable: Your Honor, I have a neurological surgeon who is scheduled to return from vacation on the 20th, as I advised the court at the beginning of trial. Your honor indicated he could testify during the trial. They are bringing up a CAT scan taken a week ago. We are being severely handicapped by not having an opportunity to examine that to have my neurosurgeon consider it before he testifies.
 
 
 21
 The Court: Get him back. Pay him to come back a day early.
 
 
 22
 Counsel for Dependable: I have no control over my neurosurgeon your Honor.
 
 
 23
 The Court: You don't?
 
 
 24
 Counsel for Dependable: None at all.
 
 
 25
 The Court: Issue a subpoena. Did you subpoena him? I have got control. If you didn't subpoena him it's your fault, not mine. Get him back. Gentlemen I am not going to conduct my calendar in accord with the calendar of expert witnesses. No way. We go to trial here. If you can't pay your witnesses enough to get back here, it's not my problem. If you didn't subpoena them, it's not my problem. If you subpoenaed them and they didn't show up, I will arrest them and have them brought in. That, I can do.
 
 
 26
 The court made it clear that it intended to conclude the trial on the following day. The court stated:
 
 
 27
 I can give you this afternoon and all day tomorrow. We can start at 9:00 and go to 6:00, 5:30, whatever. And I'm a tough baby. I have gone as late as midnight, if my reporter would bear with me, to finish a case.... And I'll tell my law clerks to call up the air conditioning people and tell them to turn it off. It's going to be maybe as late as 9:00, 10:00, 11:00, 12:00 o'clock, we will see, with breaks for the court reporter. Because that's the only way we are ever going to get this thing done. We are swamped here. We are three judges short in addition to the two that are in Congress. We are five judges short, and our case load has increased 20 percent in the last four months. It's crazy. Everybody is a litigant nowadays.
 
 
 28
 On Tuesday I have got this extortion case and that's going to go and it's a big baby for both sides, so that takes up Tuesday and Wednesday, maybe Thursday, maybe Friday. I don't know. Then I'm going to Michigan, and I'll be gone for a week, and then I come back. That's the end of August and then in August I have the last week ... I mean nothing available until August the what? August 17th is hopeless. I mean August 3rd. August 3rd maybe we can give you some time if we need it. But I don't see any reason why we can't finish this afternoon and tomorrow...."
 
 
 29
 No case is going to outlive me I'll tell you that and it's so easy to push these things if the judge is tough. I hate to be tough to injure anybody, either side, but I think I've got to be strict and tough that we move it on the basis of my pretrial order. (RT: Vol. III, pp. 328-329.)
 
 
 30
 The defense rested on Thursday, July 16 without putting on the testimony of their expert witness.
 
 
 31
 It is clear to us from this record that the district court's statement to counsel that it would work out the problem faced by the defendants because their expert would be unavailable until July 20 lulled Dependable and Ralphs into a false sense of security that the absent witness would be allowed to testify. Because of the court's assurances, Ralphs and Dependable did not take steps to secure other expert testimony.
 
 
 32
 The expert's testimony was material and not cumulative. At the hearing on their motion for a new trial, Dependable and Ralphs presented an affidavit in which their expert alleged that the new CAT scan did not show permanent brain damage. Failure to produce this rebuttal evidence at trial was not due to a lack of diligence by defense counsel, but rather to the court's conduct in failing to fulfill its promise to continue the trial to ensure that their expert would be able to testify.
 
 
 33
 The court's refusal to allow defense counsel time to present the testimony of their expert to rebut newly discovered damaging evidence presented by the plaintiff allowed this testimony to go unrebutted. Had the jury heard and believed the testimony of the defense expert, the amount of damages awarded would have been reduced. The court's rulings, precluding the appearance of the defense expert, resulted in the denial of a fair trial.
 
 
 34
 B. The Jury Verdict was Against the Weight of the Evidence
 
 
 35
 In rendering a verdict for Fenner, the jury found that there was no contributory negligence on Fenner's part.[2] The district court concluded that this finding was against the clear weight of the evidence. At the hearing on appellants' motion for a new trial the court stated:
 
 
 36
 Now in my view, I think that this fellow was guilty of 25% contributory negligence and that the jury should have had that in mind. In my view, he stepped off and pushed that door open to some extent. How far I don't know. But I don't think that the drafting effect could have pulled the door open by itself.
 
 
 37
 Once the trial judge determined that the jury's verdict on liability was against the clear weight of the evidence, he had a duty to set aside the verdict and grant a new trial. As this court stated in Moist Cold Refrigerator Co. v. Lou Johnson Co., Inc., 249 F.2d 246, 256 (9th Cir.1957):
 
 
 38
 [H]aving permitted the jury to come to its conclusion on the facts, the trial judge then had the right, and indeed the duty, to weigh the evidence as he saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in his conscientious opinion, the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial judge, a miscarriage of justice. (citation omitted).
 
 
 39
 See also Aetna Casualty & Surety Co. v. Yeatts, 122 F.2d 350 (4th Cir.1941). The court's failure to grant a new trial on the issue of liability was an abuse of discretion which compels us to reverse.
 
 C. Excessive Damages
 
 40
 The district court also erred in entering a judgment for the full amount of the jury's verdict after it concluded that the damages were excessive. At the hearing on appellants' motion for a new trial the court stated:
 
 
 41
 My feeling all along has been that the maximum possible special damages he could suffer is 158,000. He doesn't need future treatment. Now for pain and suffering, the same amount perhaps. I don't know. I figure somewhere around 300,000 is the most he should have gotten, but they came up with 400,000.... I can't remember now $400,270.54. I think it's 100,000 too high.
 
 
 42
 The court further stated: "But here you have a man that's gone back to work, continued to work and is making as much money as he ever did."
 
 
 43
 Notwithstanding this finding, the court entered the original $400,270.54 jury verdict. To do so was reversible error.
 
 
 44
 When the court, after viewing the evidence concerning damages in a light most favorable to the prevailing party, determines that the damages award is excessive, it has two alternatives. It may grant defendant's motion for a new trial or deny the motion conditional upon the prevailing party accepting a remittitur.[3] The prevailing party is given the option of either submitting to a new trial or of accepting a reduced amount of damage which the court considers justified. Minthorne v. Seeburg Corp., 397 F.2d 237, 244-45 (9th Cir.1968); Linn v. United Plant Guard Workers of America, Local 114, 383 U.S. 53, 65-66, 86 S.Ct. 657, 664, 15 L.Ed.2d 582 (1966).
 
 
 45
 If the prevailing party does not consent to the reduced amount, a new trial must be granted.
 
 
 46
 If the prevailing party accepts the remittitur, judgment must be entered in the lesser amount. Spearman v. Meyers, 15 Ohio App.2d 9, 238 N.E.2d 574, 576 (1968). In this case the trial court did not follow either alternative.
 
 
 47
 Clearly, the court cannot require a litigant to forfeit the right to appeal on penalty of having an excessive judgment entered against it. See Spearman v. Meyers, 15 Ohio App.2d 9, 238 N.E.2d 574, 576 (1968). Once the trial court finds a verdict excessive, the court cannot allow it to stand. The trial court abused its discretion in entering a judgment reflecting damages it had determined were excessive.
 
 IV. THE HEARSAY STATEMENT
 
 48
 A crucial issue at the trial was the speed of Dependable's truck at the time the accident occurred. To prove that Dependable caused Fenner's injury, Fenner introduced the testimony of an expert safety engineer. His testimony was based on observations and calculations made after the accident occurred. His so-called "ballistic" theory[4] was hotly disputed and presented a close question of fact for the jury. The only other testimony presented at trial regarding the speed of Dependable's truck was the testimony of James Hittle concerning a statement made to him by an employee of Ralphs. Hittle, a truck driver who was assisting Fenner with unloading his truck at the time of the accident, testified that a Ralphs' employee told him "the other fellow was driving too fast." Dependable objected to this testimony as hearsay. The court overruled the objection commenting: "if he's an employee of Ralphs no hearsay." The testimony was admitted against Dependable and Ralphs. Dependable argues that under the circumstances of this case, it was prejudicial error to admit the testimony of Mr. Hittle.
 
 
 49
 Fed.R.Evid. 801(d) provides that "a statement is not hearsay if (2) the statement is offered against a party and is (d) a statement by his agent or servant concerning a matter within the scope of his agency or employment made during the existence of the relationship..." (Emphasis added).
 
 
 50
 The challenged hearsay declaration was made by an employee of Ralphs, not by an employee of Dependable. Hence, the evidence was not admissible against Dependable under Fed.R.Evid. 801(d)(2). "[T]he erroneous admission of evidence is harmless unless it affects 'the substantial rights of the parties' or is 'inconsistent with substantial justice.' Fed.R.Civ.P. 61." Powell v. Levit, 640 F.2d 239, 241 (9th Cir.), cert. denied 454 U.S. 845, 102 S.Ct. 160, 70 L.Ed.2d 131 (1981) (citations omitted). Hittle's testimony presented the jury with the only eyewitness account of the speed of Dependable's truck. Thus, its potentially prejudicial effect is substantial.
 
 
 51
 Dependable and Ralphs raise additional issues concerning other alleged errors in the conduct of the trial. Since we have determined that a new trial must be ordered, we do not reach those issues.
 
 
 52
 REVERSED AND REMANDED.
 
 
 53
 CHAMBERS, Circuit Judge, proposes to file a concurring and dissenting opinion.
 
 
 54
 CHAMBERS, Circuit Judge, dissenting and concurring:
 
 
 55
 Our original disposition of February 14, 1983[1] in this case was succinct and said all that seemed necessary to dispose of the case at the time. It was as follows:
 
 
 56
 "Before: CHAMBERS, ROBB* and ALARCON, Circuit Judges.
 
 
 57
 "In this diversity case, on a motion of defendants for judgment N.O.V. and a motion for a new trial (after a jury verdict of $400,270 against defendants), the trial court ordered the verdict to stand unless the plaintiff and defendants agreed on a remittitur of about $100,000 and simultaneously waived their rights of appeal. Plaintiff was agreeable, defendants were not, so the court ordered judgment for the amount of $400,274, the amount of the verdict.
 
 
 58
 "One could, as the trial judge did, have a feeling that perhaps natural justice was done or would have been done if somehow the verdict had been reduced to $300,000, but we can find no precedent for the novel, ingenious way the motions were handled. But there is precedent for a court on a motion for a new trial to order a new trial when it thinks the award excessive, or to condition a denial on a remittitur by a plaintiff.
 
 
 59
 "Our holding is that the order was voidable on appeal.
 
 
 60
 "Defendants object to other rulings, but there is little reason for them to reoccur on a second trial, save the issue of different evidence for the case to go to the jury. For example, there was an item of the admission hearsay evidence of an employee of one defendant. We assume that the employee can be found and can testify.
 
 
 61
 "We hold there was sufficient evidence of negligence to go to the jury.
 
 
 62
 "The case does cry out for settlement or disposition at an early date.
 
 
 63
 "We ask, not order, that a new trial, if there must be one, be given high priority. We can expedite a new appeal.
 
 
 64
 "The panel as constituted for this appeal will retain the case, if it comes back.
 
 
 65
 "The case is remanded for a trial on all issues consistent herewith.
 
 
 66
 On February 28, 1983, plaintiff-appellee filed a petition for rehearing and alternatively asked for a rehearing en banc. He asserted grounds or points as follows:
 
 
 67
 "I. At most, this case should only be remanded to the district court for further proceedings to condition a denial of the motion for new trial upon remittitur.
 
 
 68
 (1) Unnecessary expense and delay of new trial
 
 
 69
 (2) The traditional reasons for new trials are absent in this case
 
 
 70
 (3) Harmless error rule applies.
 
 
 71
 "II. The trial court's vacation of its order granting remittitur and subsequent reinstatement of the judgment on jury verdict was within the court's plenary power to reconsider, revise, alter, or amend an interlocutory order.
 
 
 72
 "III. A partial new trial would be preferable to a retrial on all issues."
 
 
 73
 On June 13, 1983, defendants-appellants Dependable Trucking Co. and Martin Lemmons, at our request, filed a response to the petition asserting:
 
 
 74
 "II
 
 
 75
 "Legal Discussion ..............
 
 
 76
 "Dependable and Lemons [sic] are entitled to an order for new trial because (A) the district court denied Dependable and Lemons [sic] a fair trial by arbitrarily preventing them from making a meaningful defense and (B) the district court expressly determined that the jury's finding that plaintiff was not contributorily negligent was based on false evidence and was against the weight of the evidence.
 
 
 77
 A. Dependable and Lemons [sic] should have an unconditional new trial on all issues in this case because they have never had an opportunity to present a meaningful defense
 
 
 78
 B. Where, as here, the trial court specifically determines that jury findings are erroneous on both issues of liability and damages it has a duty to grant an unconditional new trial.."
 
 
 79
 Then, on July 27, 1983, Judges Robb and Alarcon entered an order withdrawing our Memorandum of February 14, 1983. (Judge Robb had returned to the case after an extended illness.) In due course, on September 9, 1983, I dissented from their order. Thereupon, on September 9, 1983, the same day, the majority filed an Opinion.
 
 
 80
 I now dissent again, but I do concur in the result of the Opinion filed on September 9, 1983. The bottom line is that both dispositions order a new trial. What is the difference? The main difference is that the new majority goes out of its way to upbraid a trial judge who as chief judge had been forced to accept a full load of trial work and still had heavy duties of chief judge for a court of over 20 judges, senior and active. I thought then, and I think now, that his irascibility in the first case would not reoccur because he now, as a senior judge, need not be overburdened. In my early days here I may have tried to preach to trial judges, but I found it was ineffective.
 
 
 81
 I still await the time when someone will tell me why every issue covered in the case in the Memorandum of February 14, 1983, and in the petition for rehearing could not have been handled in an Opinion or Memorandum thereon, instead of substituting a new Opinion which may be expected to result in the delay of new petitions for rehearing. The new majority could have even in their ruling stated that the Memorandum of February 14, 1983, was superseded by its views expressed in the rehearing order.
 
 
 82
 If the plaintiff outlives this litigation, he may be a great, great grandfather.
 
 
 
 *
 Hon. Roger Robb, Senior United States Circuit Judge for the District of Columbia, sitting by designation
 
 
 [1]
 The term CAT is an acronym for the words "computerized axial tomography". Dorland's Illustrated Medical Dictionary, (26th Ed.1981)
 
 
 [2]
 The Court stated:
 Now I am going to have to ask you in that connection did you find contributory negligence by the plaintiff?
 Foreperson: No we did not. (RT: Vol. VI, p. 997.)
 
 
 [3]
 A remittitur is a device which the court may invoke to correct an excessive verdict. 11 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2815 (1973)
 
 
 [4]
 According to Dependable's brief, the expert's theory was that the plaintiff's head reacted to the impact from the trailer door as if it was not attached to his body. By working backwards from the point where Fenner struck the ground the expert calculated the speed of Dependable's truck
 
 
 [1]
 Amended by order filed July 19, 1983, to correct printer's error
 
 
 *
 "The Honorable Roger Robb, Senior United States Circuit Judge for the District of Columbia, sitting by designation, participated in the argument but not in the disposition." [End of Memorandum.]