871 F.2d 891
 13 Fed.R.Serv.3d 976, Prod.Liab.Rep.(CCH)P 12,110
 In re HAWAII FEDERAL ASBESTOS CASES.
T. Moana CARVALHO, individually and as special
administratrix of the Estate of Manuel S.
Carvalho, deceased; Manuel C.K.
Carvalho; Michael K.
Carvalho; Cynthia
U. Kanuha,
Plaintiffs-Appellees,
v.
JOHNS-MANVILLE SALES CORPORATION, etc., Defendant,
and
Raymark Industries, Inc., successor to Raybestos-Manhattan,
Inc., Defendant-Appellant.
 No. 87-2745.
 United States Court of Appeals,
Ninth Circuit.
 Oral Argument Originally Scheduled for Sept. 15, 1988.
Proceedings Stayed Pursuant to 11 U.S.C. Sec. 362(a)(1)
Sept. 16, 1988.
Submitted Nov. 10, 1988.*
Memorandum Filed Dec. 15, 1988.
Decided April 3, 1989.
 
 Paul Devenes, Ikuzaki, Devens, Lo, Youth & Nakano; Russell H. Ando, Honolulu, Hawaii, for defendant-appellant.
 Gary O. Galiher, Galiher and De Robertis, L. Richard De Robertis, Honolulu, Hawaii, for plaintiffs-appellees.
 Appeal from the United States District Court for the District of Hawaii.
 Before CHOY, CANBY, and TROTT, Circuit Judges.
 TROTT, Circuit Judge:
 
 
 1
 Raymark Industries challenges the district court's application of the statute of limitation; submission to the jury of special verdict interrogatories phrased in the alternative; refusal to poll the jury on each subpart of each interrogatory; denial of Raymark's motion for JNOV or, in the alternative, for a new trial; and imposition of a Rule 11 sanction against Raymark on Raymark's motion for summary judgment. We affirm.
 
 BACKGROUND
 
 2
 Plaintiffs-appellees[1] filed this action on behalf of Manuel S. Carvalho, on July 28, 1980, against twenty-seven producers and distributors of asbestos-related products, of whom defendant-appellant Raymark Industries was one. The complaint sought damages for Manuel S. Carvalho's death of asbestosis and asbestos-related lung cancer on September 4, 1978. Carvalho had repeatedly inhaled asbestos dust and fibers while working at Pearl Harbor Naval Shipyard between 1941 and 1971.
 
 
 3
 The jury found for plaintiffs-appellees, awarding $213,046.62 in compensatory damages against twelve manufacturers, and $500,000 in punitive damages against Raymark. The jury also found that Carvalho knew or should have known on July 5, 1978 that he had a claim for his asbestos-related injuries. The trial court therefore entered judgment for defendants on the ground that Hawaii's two-year statute of limitation for personal injury claims, Haw.Rev.Stat. Sec. 657-7 (1985), barred plaintiffs' cause of action.
 
 
 4
 Plaintiffs appealed the trial court's judgment, arguing that the court had not instructed the jury that defendants had the burden of proving the date on which plaintiffs' cause of action accrued. We held that the trial court's failure to instruct the jury that defendants had to establish accrual was reversible error, and we remanded the case for retrial solely on the statute of limitation issue. See Carvalho v. Raybestos-Manhattan, Inc., 794 F.2d 454 (9th Cir.1986). On remand, the jury returned a verdict which the trial court interpreted as indicating that the claim was not time-barred, and judgment was entered for plaintiffs reinstating the $500,000 punitive damages award against Raymark. Raymark timely appeals.
 
 ANALYSIS
 1. Hawaii Statute of Limitation
 
 5
 We review the district court's application of state law de novo. Edwards v. Teamsters Local Union No. 36, 719 F.2d 1036, 1039 (9th Cir.1983), cert. denied, 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984).
 
 
 6
 The Hawaii statute of limitation for personal injury reads: "Damage to persons or property. Actions for the recovery of compensation for damage of injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in Section 657-13 [insanity, infancy or imprisonment]." Haw.Rev.Stat. Sec. 657-7. The district court gave the following instruction to the jury regarding application of this statute:
 
 
 7
 The Defendant has the burden of proving by a preponderance of the evidence all of the facts necessary to establish when if ever, that Manuel S. Carvalho discovered, or through the exercise of reasonable diligence on his part should have discovered, on or before July 27, 1978: (1) that his asbestos-related lung cancer/asbestosis was caused by asbestos, (2) the Defendant's negligence (or violation of a duty), and (3) the causal connection between the two.
 
 
 8
 Appellant contends that under Sec. 657-7 the accrual of a claim begins when the plaintiff discovers or should have discovered the cause of his injury rather than when that discovery is joined by awareness of the defendant's negligence and the causal connection between the injury and the negligence. Appellant supports this contention by asserting that Hawaii has confined the interpretation of the statute of limitation embodied in the trial court's jury instructions to the medical malpractice context, which is governed by Hawaii Rev.Stat. Sec. 657-7.3.
 
 
 9
 Appellant's attack on the district court's interpretation of Sec. 657-7 is without merit. The district court's interpretation finds support in our past decisions. See In re Asbestos Cases, 847 F.2d 523, 527 (1988); Carvalho v. Raybestos-Manhattan, Inc., 794 F.2d at 456. The treatment of Sec. 657-7 and Sec. 657-7.3 in Hawaii Supreme Court opinions reveals that our understanding of Hawaii's personal injury statute of limitation is correct.
 
 
 10
 Before the enactment of Sec. 657-7.3 in 1973, Hawaii medical malpractice actions were governed by the statute of limitation for property damage and personal injury claims set forth in Sec. 657-7. Yamaguchi v. Queen's Medical Center, 65 Hawaii at 84, 88-9, 648 P.2d 689, 692 (1982). In Yoshizaki v. Hilo Hospital, a pre-1973 case, the Supreme Court of Hawaii held in the medical malpractice context that the statute limiting the time for beginning an action for damages to persons or property did not begin to run until the plaintiff "could reasonably have been aware that she had a claim." 50 Hawaii 150, 154, 433 P.2d 220, 223 (1967). After the passage of Sec. 657-7.3, the Hawaii Supreme Court adopted this standard as the relevant interpretation of both Sec. 657-7 and Sec. 657-7.3. See Yamaguchi v. Queen's Medical Center, 65 Hawaii at 90, 648 P.2d at 692-93.
 
 
 11
 The fact that Yoshizaki and Yamaguchi are both medical malpractice actions might seem to leave room for doubt as to whether Sec. 657-7 should be interpreted differently outside the malpractice context. But, in Basque v. Yuk Lin Liau, an action for damage to the plaintiff's store caused by leakage from the defendant's broken sewer pipe, the Supreme Court of Hawaii held that Yoshizaki should be extended to cases involving injury to property. See 50 Hawaii 397, 399, 441 P.2d 636, 637 (1968) ("Although there are factual differences between actions to recover damages to persons and property, they are insufficient to justify a different construction of the same statute.... Therefore, on remand, the trial court must determine when the plaintiff knew or in the exercise of reasonable care should have discovered that an actionable wrong has been committed against his property."). It is reasonable to conclude that if Yoshizaki applies to injury to real property, it will apply to personal injury, which is more analogous to medical malpractice.
 
 
 12
 Hawaii Supreme Court precedent as well as our past decisions thus establish that the district court correctly interpreted Sec. 657-7. Under Hawaii law, an action for personal injury or property damage accrues when the plaintiff knew or in the exercise of reasonable diligence should have known that she had a claim. In the personal injury context, knowledge of a claim involves knowledge that the defendant's negligence or violation of a duty may have caused the injury.
 
 2. Form of the Special Verdict
 
 13
 According to Fed.R.Civ.P. 49(a), the trial court's complete discretion as to whether a special or general verdict is to be returned extends to determining the form of the verdict and interrogatories, provided that the questions asked are adequate to obtain a jury determination of all factual issues essential to judgment. R.H. Baker & Co. v. Smith-Blair, Inc., 331 F.2d 506, 508 (9th Cir.1964). We have a duty to reconcile the jury's special verdict responses on any reasonable theory consistent with the evidence. Ortiz v. Bank of America National, 824 F.2d 692, 696 (9th Cir.1987) (citing Gallick v. Baltimore & O.R.R., 372 U.S. 108, 119-22, 83 S.Ct. 659, 668-69, 9 L.Ed.2d 618 (1963)).
 
 
 14
 The three factual issues necessary to judgment of when appellees' cause of action accrued should be apparent from the foregoing discussion of the Hawaii statute of limitation. The interrogatories composing the special verdict must have determined clearly whether Carvalho discovered or reasonably should have discovered the damage, the negligent act, and the causal connection between them more than two years before his claim was filed.
 
 
 15
 The following interrogatories composed the special verdict:
 
 
 16
 1. By what date, if any, did Manuel S. Carvalho know, or through the exercise of reasonable diligence on his part should have known, that he had diseases diagnosed as abeestos-related lung cancer/asbestosis?
 
 
 17
 2. By what date, if any, did Manuel S. Carvalho know, or through the exercise of reasonable diligence on his part should have known, that Raymark Industries, Inc. was negligent in the manufacturing of its asbestos-containing products (or violated a duty towards him?)
 
 
 18
 3. By what date, if any, did Manuel S. Carvalho know, or through the exercise of reasonable diligence on his part should have known, of the causal connection between his lung cancer/asbestosis and the negligence or the violation of a duty by Raymark Industries, Inc.?
 
 
 19
 The jury answered Interrogatory One with "July 22, 1978" (two years and six days before plaintiffs filed the action). In the answer blank following Interrogatories Two and Three, the jury drew a line. Because the trial judge had told the jury that drawing a line indicated "no date," we can take the jury's response to Interrogatories Two and Three to indicate judgment that Carvalho neither knew nor should have known about Raymark's negligence or its role in causing his disease before his death on September 4, 1978.
 
 
 20
 Appellant Raymark argues that it is unclear whether the jury meant its answers to address the question of what Carvalho knew, or of what he should have known. According to appellant, each of the three questions should have been broken down into two parts: one regarding what Carvalho knew and one regarding what he should have known. This degree of precision was not necessary to determine the relevant issue for judgment: i.e., whether Carvalho knew or should have known about the damage, the negligent act and the causal connection between them before July 29, 1978. It is true that we do not know whether the jury's answer of "July 22, 1978" to Interrogatory One referred to the date on which Carvalho knew or the date on which he should have known about his disease. But, for purposes of judgment, what is relevant is simply that one of the alternatives is true: that Carvalho knew or should have known about the disease more than two years before his action began.
 
 
 21
 Appellant further asserts that it is "metaphysically and legally impossible" for the jury to find, as its answers establish it did, that there was no date before his death on which Carvalho should also have known about Raymark's negligence or its role in causing his disease. Far from positing a philosophical conundrum, the jury's answers simply assert its judgment that, given evidence about Carvalho's behavior and state of mind after he was told of his disease, he neither knew or should have known about Raymark's negligence or their violation of a duty towards him before his death.
 
 
 22
 The trial court's interrogatories thus meet the R.H. Baker test of obtaining resolution of all issues relevant to judgment.
 
 3. Polling the Jury
 
 23
 The form of jury polling is a matter entrusted to the sound discretion of the trial judge. United States v. Lustig, 555 F.2d 737, 746 (9th Cir.), cert. denied, 434 U.S. 926, 98 S.Ct. 408, 54 L.Ed.2d 285 (1977).
 
 
 24
 Appellant contends that the trial court abused its discretion when it denied Raymark's request to poll the jury separately on each subpart, "knew" and "should have known," of each interrogatory. This argument is completely without merit for two reasons.
 
 
 25
 First, there is no case support for Raymark's position that the parties to a civil action may insist not simply on a jury poll, but on a particular type of jury poll. The only case cited by appellant affirmed the district court's decision and held that failure to interrogate each juror individually, though required by the relevant state's rules of civil procedure, did not violate the plaintiff's rights or deprive him of a fair trial. Wilkerson v. Darragh & Lyda, Inc., 408 S.W.2d 542 (Tex.Civ.App.1966).
 
 
 26
 Second, the manner in which the district court polled the jury assured that each juror concurred in the verdict. See Humphries v. District of Columbia, 174 U.S. 190, 194, 19 S.Ct. 637, 638-39, 43 L.Ed. 944 (1899) (The object of a jury poll "is to ascertain for a certainty that each of the jurors approves of the verdict as returned; that no one has been coerced or induced to sign a verdict to which he does not fully assent."). Immediately after the jury rendered its special verdict, the judge asked each juror: "Are the verdicts as read your verdicts?" This poll is inadequate to ascertain unanimity only if the interrogatories composing the special verdict led to a jury response that was impossible to understand and interpret. Because the district court's interrogatories did not lead to confusing responses, appellant's contention that the trial judge should have polled the jury separately on each subpart of each question is unpersuasive.
 
 4. Motion for JNOV
 
 27
 Viewing the evidence in the light most favorable to the nonmoving party, as we must in considering a motion for JNOV, Peterson v. Kennedy, 771 F.2d 1244, 1253 (9th Cir.1985), cert. denied, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986), it is clear that there is sufficient evidence supporting the jury verdict to make JNOV inappropriate. Appellant's contention that the district court erred in denying Raymark's motion for JNOV is thus without merit.
 
 5. Motion for a New Trial
 
 28
 A motion for a new trial falls within the discretion of the trial court and can only be overturned if that discretion has been abused. Robins v. Harum, 773 F.2d 1004, 1006 (9th Cir.1985).
 
 
 29
 Raymark argues that the district court's denial of the motion for a new trial constitutes an abuse of discretion because the jury's answers to the second and third interrogatories were against the clear weight of the evidence. As a general proposition, the district court's ruling on a motion for a new trial on the ground that the verdict is against the weight of the evidence will only constitute an abuse of discretion under unusual or special circumstances. 6 A.J. Moore, J. Lucas & G. Grotheer, Moore's Federal Practice p 59.08 (2d ed. 1987). For example, in Fenner v. Dependable Trucking Co., Inc., 716 F.2d 598 (9th Cir.1983), the district court had concluded that the jury finding was against the clear weight of the evidence and then proceeded to deny a motion for a new trial. We held that in these circumstances the trial judge had a duty to set aside the verdict and order a new trial. 716 F.2d at 602.
 
 
 30
 Equally unusual circumstances do not exist in the present case. Moreover, in the first appeal taken on this action, we suggested that the evidence was not clearly weighted: "there was conflicting evidence regarding when the cause of action accrued." Carvalho, 794 F.2d at 455. For these reasons, the trial court's denial of appellant's motion for a new trial was not an abuse of discretion.
 
 6. Rule 11 Sanction
 
 31
 We review de novo the district court's conclusion that Raymark's motion for summary judgment violated Rule 11. Golden Eagle Distributing Corp. v. Burroughs Corp., 801 F.2d 1531, 1538 (9th Cir.1986); Zaldivar v. City of Los Angeles, 780 F.2d 823, 828 (9th Cir.1986).
 
 
 32
 After we remanded Carvalho's action to the district court for further findings on the accrual issue, Raymark brought a motion for summary judgment on the same issue. The district court denied Raymark's motion, found it not "well grounded in fact" and imposed a Rule 11 sanction at $550 (an amount calculated to reimburse plaintiffs' lawyers for the five and a half hours it took to prepare opposition to the motion).
 
 
 33
 For Raymark's motion to have been well grounded in fact, it would have to be reasonable to infer that the testimony of the witnesses could lead to only one conclusion: The statute of limitation had run. As the district court points out in its order denying Raymark's motion for summary judgment, such an inference does not seem reasonable in light of the evidence. First, both Dr. Chang and Dr. Lee testified that they did not recall if they ever discussed asbestosis with the decedent. Although Dr. Lee did testify that it is his usual practice to discuss problems with his patients, this testimony does not establish that there is only one reasonable conclusion to be drawn from the evidence. Nor does the new evidence Raymark has acquired since the first trial in 1984 support this argument. The testimony of Dr. Asam that he probably told Carvalho he had a "bad tumor" on July 26, 1978 is not dispositive, nor is Arlene Ayakawa's testimony that Carvalho's daughter Moana told her on July 26, 1978 that the family knew Carvalho's condition was asbestos-related. Moana Carvalho further testified that the power of attorney her father executed on her behalf on July 28, 1978 was his idea, but this does not establish conclusively that Carvalho was aware he had a cause of action against Raymark before this time.
 
 
 34
 Appellant further argues that its motion for summary judgment is warranted by "existing law or a good faith argument for the extension, modification or reversal of existing law." Raymark contends that the "existing law or good faith argument" here lies in the proposition that concealment by co-plaintiffs cannot be used to postpone the accrual of a cause of action. Although one of Carvalho's doctors told the family on July 22, 1978 that Carvalho's condition was asbestos-related, the family did not inform Carvalho because they did not wish him to know he had cancer.
 
 
 35
 We have held that "a good faith belief in the merit of a legal argument is an objective condition which a competent attorney attains only after 'reasonable inquiry'.... [T]he conclusion drawn from the research undertaken must itself be defensible." Zaldivar v. City of Los Angeles, 780 F.2d at 831. In this case, appellant's contention that "as a matter of policy, there is something very wrong with a decision to conceal from Mr. Carvalho the facts of his illness" is not a defensible conclusion from the legal research undertaken. The case that appellant relies on to establish that as "a general matter, concealment by a party other than the party seeking protection of the statute of limitations does not speak against persons who do not participate in the concealment," Stoneman v. Collier, 94 Mich.App. 187, 288 N.W.2d 405 (1979), concerned not a "general matter" but the particular interpretation of Michigan's fraudulent concealment act. This holding does not provide an adequate legal basis for Raymark's conclusion that plaintiff's concealment of the asbestos-related nature of her father's disease prevents her from using her father's ignorance to postpone accrual of the cause of action.
 
 
 36
 In sum, Raymark's motion for summary judgment was neither well-grounded in fact nor warranted by existing law or a good faith argument for the extension, modification or reversal of existing law. We therefore uphold the district court's imposition of a Rule 11 sanction.
 
 CONCLUSION
 
 37
 We affirm the district court's ruling on all counts.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 [1]
 We referred to plaintiff-appellee, T. Moana Carvalho, as Manuel S. Carvalho's wife in an earlier appeal on this case. Carvalho v. Raybestos-Manhattan, Inc., 794 F.2d 454, 455 (9th Cir.1986). It appears from the Excerpt of Record and Appellant's Brief, however, that T. Moana Carvalho is Manuel S. Carvalho's daughter