946 F.2d 899
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Anthony ROBERTS, Plaintiff-Appellant,
v.
UNION PACIFIC RAILROAD COMPANY, Defendant-Appellee
 No. 89-55627.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 8, 1991.*
Decided Oct. 9, 1991.
 
 1
 Before REINHARDT and FERNANDEZ, Circuit Judges, and SMITH, District Judge**
 
 
 2
 MEMORANDUM***
 
 
 3
 This is an appeal from a denial of plaintiff-appellant's motion for a new trial after the jury returned a defense verdict. Plaintiff-appellant Anthony Roberts brought an action under the Federal Employer's Liability Act ("FELA"), 45 U.S.C.A. § 51 et seq., and the Boiler Inspection Act ("BIA"), 45 U.S.C.A. § 23 et seq., against his long-time employer, Union Pacific Railroad, after he was diagnosed with hearing loss allegedly stemming from on-the-job noise exposure.
 
 
 4
 The trial court's denial of the motion for a new trial is affirmed.
 
 FACTS
 Background
 
 5
 Anthony Roberts worked for Union Pacific for nearly thirty years, except for a three-year period in the late 1980's. He spent much of his career as a switchman in train yards in and around Los Angeles. Roberts also worked for about three years as a brakeman on Union Pacific freight cars traveling throughout southern California. He usually rode in the cab, but sometimes rode in the caboose.
 
 
 6
 Switchmen are often exposed to loud noises on the job. The engines, horns, air brake releases, and metal on metal screeches of trains coming to a halt on the tracks all contribute to the din in the yard. Brakemen are also exposed to constant noise. The horn on the roof of the cab is very loud, as is the noise of the train on the rails.
 
 
 7
 Between July 1985 and September 1988, Roberts went on disability for health reasons. He suffers from diabetes, high cholesterol, high blood pressure, and related disorders.
 
 
 8
 Roberts has some hearing loss. In the mid-1960's, he sustained a severe, chronic middle ear infection in his left ear; he underwent surgery to remove the infection and repair structural problems that the infection had caused. Tests conducted in August 1985 established "mild" hearing loss in both ears, with a greater deficiency in the left ear. He wears hearing aids.
 
 
 9
 Union Pacific instituted a voluntary hearing conservation program in 1987, over twenty years after Roberts started working there. It does not require workers on the trains and in the yards to wear earplugs, but it does not prohibit their use.
 
 
 10
 The federal government regulates noise levels in the railroad industry. The Federal Railroad Administration and the Occupational Safety and Health Administration have mandated a 90 decibel time-weighted average for railroad workers.[1] The regulations also prohibit exposure of more than one second to noise above 115 decibels.
 
 Trial
 
 11
 Roberts brought an action against Union Pacific in 1987 under FELA and the BIA. He alleged that his exposure to noise on the job caused his hearing loss.
 
 
 12
 At trial, the jury heard conflicting testimony on several key points. On the issue of liability for non-compliance with the federal regulations, both Roberts and Union Pacific introduced studies purporting to show that Roberts was or was not exposed to noise exceeding the 90 decibel time-weighted limit. The Kilmer Report, a study performed under the auspices of the National Bureau of Standards, concluded that noise levels in the railroad industry are within acceptable limits. Roberts' noise expert conceded that the Kilmer Report's conclusions were accurate when measured against the 90 decibel standard. His own preference was for an 85 decibel standard. Union Pacific introduced its own noise-level studies that it had performed in 1975, 1977, and 1978 in various states. According to Union Pacific, these studies were consistent with the Kilmer Report's conclusions; according to Roberts, Union Pacific's studies show that its brakemen receive noise doses over 100%. The Kilmer study reported a 19% noise dose; the railroad reported noise doses under 100%.[2] All the studies found that railroad workers were often exposed to noises above 90 decibels for part of their shifts.
 
 
 13
 In addition to the studies, Roberts presented considerable lay testimony to show what everyone knows--trains and railroad yards are noisy places. Furthermore, his expert, Dr. Glorig, testified that the "retarder system" in the railroad yards generates noises in the 133-35 decibel range, well above the 115 decibel ceiling.[3] Union Pacific points out that these readings occurred at the Union Pacific yard in Oregon, a place Roberts never worked.
 
 
 14
 On the issue of causation, the jury also heard conflicting expert testimony. Roberts' expert testified that Roberts suffers from permanent noise-induced hearing loss. Union Pacific's expert testified that, in his opinion, Roberts' hearing loss was due to age, diabetes, and other health problems. Union Pacific's brief states, "[A]s to the portion of the Roberts' hearing loss that could be noise-induced, [Union Pacific's expert] Dr. Clark explained that it was likely just 'a little' of the total degree of loss." Opp. at 22.
 
 
 15
 The case was tried to the Honorable George H. King, United States Magistrate Judge. The Honorable Pamela Ann Rymer, then of the district court, was the presiding Judge. The jury returned a defense verdict on a special verdict form. Magistrate Judge King entered judgment in March 1989. Roberts moved for a new trial on the grounds the evidence did not support the verdict. The motion for a new trial was taken off calendar, deemed submitted on the papers, and summarily denied by the Magistrate Judge in a minute order dated May 2, 1989.
 
 
 16
 This timely appeal followed.
 
 DISCUSSION
 Standard of Review
 
 17
 In Landes Construction Co. v. Royal Bank, 833 F.2d 1365, 1372 (9th Cir.1987), this Court stated:
 
 
 18
 We review the trial court's decisions on motions for a new trial on the grounds that the verdict is against the clear weight of the evidence for an abuse of discretion.... We will reverse denials of such motions in only four strictly limited situations [not present here].[4] As we cannot weigh the evidence for ourselves, we will reverse a denial of a new trial if we find one of these four errors or if the record contains no evidence in support of the verdict.
 
 
 19
 Because none of the "four strictly limited situations" is present in this case, the appropriate standard of review is whether "the record contains no evidence in support of the verdict." Id. (emphasis added).
 
 Boiler Inspection Act
 
 20
 The BIA makes it unlawful for a railroad to use a locomotive unless the locomotive and its parts
 
 
 21
 are in proper condition and safe to operate in the service to which the same are put, that same may be employed in the active service of such railroad without unnecessary peril to life or limb, and unless said locomotive ... and all parts ... are able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for.
 
 
 22
 45 U.S.C.A. § 23 (West Supp.1991).
 
 
 23
 Roberts claims that Union Pacific violated the BIA by failing to comply with the noise regulations promulgated by the Federal Railroad Administration. Courts have recognized that a carrier may violate the BIA by failing to comply with federal regulations. Mosco v. Baltimore & Ohio R.R., 817 F.2d 1088, 1091 (4th Cir.), cert. denied, 484 U.S. 851 (1987).
 
 
 24
 At trial, both parties presented evidence on the level of noise to which Roberts was exposed. There was no direct evidence that Roberts had ever been exposed to levels in excess of the regulations. There was direct evidence that some railroad workers in some places are exposed to noise above the 90 decibel limit, and there was considerable circumstantial evidence that Roberts might have been exposed to more than the 90 decibel time-weighted average or the 115 decibel absolute figure at some point in his career. A reasonable jury could have decided either way on this issue. The jury in this case heard the evidence and discounted Roberts' studies from other yards in other parts of the country to the extent they showed exposure over 90 decibels. The jury gave credence to Union Pacific's noise-level evidence and probably noted the absence of direct evidence as to Robert's exposure.
 
 
 25
 On this record, it cannot be said that the trial court abused its discretion in refusing to grant a new trial. Denial of a motion for new trial will be reversed only if there is "no evidence" in support of it; certainly some evidence supports denial here. Landes, 833 F.2d at 1372.
 
 Federal Employers' Liability Act
 
 26
 FELA permits railroad employees to sue the railroads for negligence if they are hurt on the job. The statute allows recovery if the injury results "in whole or in part from the negligence of " the railroad, or from "any defect or insufficiency, due to its negligence, in its engines, ... track, or other equipment." 45 U.S.C.A. § 51 (emphasis added).
 
 
 27
 A plaintiff in a FELA action must prove that the employer was negligent. Tennant v. Peoria & Pekin Ry. Co., 321 U.S. 29, 32 (1944). A plaintiff must prove "all the same elements as are found in a common law negligence action." Davis v. Burlington Northern, Inc., 541 F.2d 182, 185 (8th Cir.), cert. denied, 429 U.S. 1002 (1976) (remanding with instructions to enter JNOV for defendant railroad because plaintiff had failed to prove foreseeability of injury). If a plaintiff fails to prove any single element, the cause of action must fail.
 
 
 28
 Roberts argues that the jury's finding of no negligence was against the clear weight of the evidence because he presented evidence to establish both the breach of duty and causation elements of his negligence action. On the duty element, he relies on the testimony of his expert for the proposition that the railroad industry has known for years of the dangers that excessive noise exposure poses for its employees. Roberts contends that by failing to reduce on the job noise exposure, Union Pacific breached its statutory duty. He cites Union Pacific's failure to provide hearing protection as additional support for this theory.
 
 
 29
 On the causation element, he points to expert medical testimony that at least some of his hearing loss was noise-induced. Union Pacific's expert doctor conceded that at least "a little" of the hearing loss was due to noise exposure.
 
 
 30
 The question before this court is neither whether Roberts presented evidence in favor of his cause of action nor whether this evidence outweighs the evidence presented by Union Pacific. Landes, 833 F.2d at 1372 ("We may not weigh evidence or assess the credibility of witnesses"). It is the trial court's acceptance of the jury's finding of no liability that is at issue on appeal. Unless there was "no evidence in support of" that finding, the district court must be affirmed. Id. In other words, if there was any evidence in the record to support either a finding that Union Pacific did not breach its duty to Roberts or a finding that any breach did not cause Roberts' injuries, the district court's denial of the motion for new trial must be affirmed.
 
 
 31
 The record contains ample evidence to support the jury's finding of no liability under FELA. First, there was evidence to support a finding that the railroad had not breached its duty to Roberts because Roberts had never been exposed to excessive noise on the job. The Kilmer Report concluded that noise levels in the railroad industry are within acceptable limits. Union Pacific's own reports concluded that railroad workers were exposed to less than 100 percent of the noise allowable under the 90 decibel time-weighted standard adopted by the federal government. While compliance with the 90 decibel regulation is probably not an absolute defense under FELA as it is under the BIA, the jury's finding of no BIA liability is consistent with its implicit finding that the railroad did not breach its duties to Roberts. King v. Southern Pacific Transp. Co., 855 F.2d 1485, 1488 n. 1 (10th Cir.1988) ("claims which cannot be maintained under the BIA are often actionable under the FELA"); but cf. Sandstrom v. Chicago & N.W. Transp. Co., 907 F.2d 839, 840 (8th Cir.1990) (implicitly holding that compliance with regulations is a defense to both BIA and FELA claims).[5] Because there was evidence in the record to support a jury finding that Union Pacific had not breached its duty to Roberts, Roberts' motion for a new trial was properly denied by the trial court.
 
 
 32
 Furthermore, there was evidence to support a finding that Roberts' hearing loss was not caused by any negligence on the part of Union Pacific. The jury heard evidence regarding Roberts' medical condition, including his serious bout of ear trouble in the 1960's and his current metabolic problems. It was free to discount the testimony of Roberts' expert and conclude that all of the hearing loss stemmed from factors other than the railroad work. The jury was also free to discount the testimony of Union Pacific's expert that "a little" of Roberts' hearing loss was noise induced, especially in light of the fact that the expert did not testify that the hearing loss was caused by any negligence on the part of Union Pacific. Union Pacific's expert testified that hearing tests on Roberts did not show a "classic profile" of noise-induced hearing loss. This testimony, combined with the testimony regarding Roberts' medical history, was sufficient to support a finding that Roberts did not prove the negligence on the part of Union Pacific which is necessary for liability under FELA.[6]
 
 
 33
 Finally, there was evidence in the record to support a jury finding that Union Pacific was not negligent in failing to provide hearing protection. The jury could have concluded that because it met the 90 decibel requirement, Union Pacific was not acting unreasonably. Alternatively, the jury could have found that Union Pacific's hearing conservation program, instituted in 1987, was not too little too late. It was entitled to believe Union Pacific's evidence that some workers prefer not to wear protection because it prevents them from hearing conversations and radio communications; it also could credit the evidence that Union Pacific never discouraged the use of earplugs.[7]
 
 
 34
 In short, while fair-minded people could differ about the FELA claim, one could not say that no evidence in the record supports the verdict. The district court did not abuse its discretion in denying Roberts' motion for new trial.
 
 CONCLUSION
 
 35
 The motion for a new trial was properly denied. It cannot be said that the record contains "no evidence in support of the verdict." Landes, 833 F.2d at 1372.
 
 
 36
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 REINHARDT, Circuit Judge, dissenting:
 
 37
 I respectfully dissent. In my opinion the trial court's denial of the motion for a new trial was erroneous with respect to both the Boiler Inspection Act and the Federal Employer's Liability Act. Even the defendant's expert witness acknowledged that the railroad was responsible for part of the plaintiff's hearing loss. The only question was how much. That question related to damages, not to liability. The railroad may regret its expert's concession, but neither we nor the jury are free to ignore it. There can be no doubt that under the evidence presented at trial a part of the plaintiff's injury was caused by the defendant's equipment. Thus, a violation of the Boiler Inspection Act was established. In my view the same evidence necessarily established negligence under the Federal Employer's Liability Act. I simply do not agree with the majority that the jury was free to disregard not only the plaintiff's evidence but that presented by the defendant as well. To permit a jury to do so is to authorize it to disregard the record. I would reverse and remand for a new trial.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 The Honorable Fern M. Smith, United States District Judge for the Northern District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided in Circuit Rule 36-3
 
 
 [1]
 The railroad's brief explains that a time-weighted average takes into account the possibility that a worker may be exposed to noise above 90 decibels for part of the work day, as long as the average exposure for an eight-hour period is less than 90 decibels. If a worker receives a "noise dose" of 100% or more, that means that the average level of exposure throughout the shift was 90 decibels or more
 The parties also point out that because decibels are measured on a logarithmic scale, 90 decibels is much louder than, e.g., 85 decibels. Normal conversation is in the range of 60 to 70 decibels.
 
 
 [2]
 The railroad's brief becomes surprisingly vague at this point. After noting that its 1975 study found a 65% noise dose, it omits any specific numbers for the 1977 and 1978 studies
 
 
 [3]
 Dr. Glorig's deposition testimony was admitted by videotape at trial. Union Pacific points out that his testimony is not part of the record on appeal. Because this Court would prefer to deal with the merits rather than with procedural peccadilloes, we rely on the account of Glorig's testimony in Roberts' brief
 
 
 [4]
 The four situations in which a court will reverse a denial of a motion for new trial are: "(1) the trial court believes it lacks the power to grant a new trial, see Byrd v. Blue Ridge Rural Electric Coop., Inc., 356 U.S. 525, 540 (1958); (2) it concludes that it may not weigh the evidence, see Moist Cold Refrigerator Co., 249 F.2d at 256; (3) it weighs the evidence explicitly against the wrong standard, i.e., substantial evidence or preponderance of the evidence, see id.; or (4) it concludes the verdict is against the clear weight of the evidence but refuses to grant a new trial, see Fenner v. Dependable Trucking Co., 716 F.2d 598, 602 (9th Cir.1983) (rather than grant a new trial, judge tried to force parties to accept a remittitur)." Id
 
 
 [5]
 The railroad's brief glosses over the difference between the BIA claim and the FELA claim, apparently in the hope that the Court will deem compliance with the regulations as a defense to both. The plain language of FELA does not support this construction, however
 
 
 [6]
 The Court is well aware that statutory negligence actions under FELA are "significantly different from the ordinary common-law negligence action." Rogers v. Missouri Pacific R.R. Co., 352 U.S. 500, 509-10 (1957)
 Under [FELA], the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.... The statute expressly imposes liability on the employer to pay damages for injury or death due 'in whole or in part ' to its negligence.
 325 U.S. at 506-07 (emphasis in original; footnotes omitted). This lowered threshold for the causation element does not change the fundamental issue before the court: whether there is any evidence to support the verdict entered by the jury.
 
 
 [7]
 Nothing in the record indicates that the jury impermissibly adopted an assumption of the risk theory. Sandstrom, 907 F.2d at 841 ("It is well settled that assumption of the risk is not a defense" under FELA)