Phyllis MILLER, Plaintiff–Appellant,

v.

MAXWELL'S INTERNATIONAL INC., dba Maxwell's Plum, Debtor in possession; Carlo Galazzo, Gen. Mgt., Dino La Rosa; Don Bohn; Don Schupak, et al., Defendants–Appellees.

No. 90–16286.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 8, 1991.

Decided April 19, 1993.

584

Phyllis Miller, pro se.

Robert D. Links, Dobbs, Berger, Molinari, Vannelli, Nadel & Links, San Francisco, CA, for defendants-appellees.

Samuel A. Marcosson, Atty., E.E.O.C., Washington, DC, for the amicus.

Before FLETCHER, WIGGINS, and KOZINSKI, Circuit Judges.

WIGGINS, Circuit Judge:

Plaintiff/Appellant Phyllis Miller, proceeding pro se, filed sex and age discrimination claims in the district court under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (1988), the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621-634 (1988), and the Equal Pay Act of 1963 (EPA), 29 U.S.C. § 206(d) (incorporated into and enforced through the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-219 (1988)). She also asserted claims for retaliation and emotional distress. Miller appeals from the district court's dismissal of her claims as untimely (barred by statutes of limitations and laches) or for failure to state a claim.

## I Facts

Miller is pursuing sex and age discrimination claims against six defendants in their individual capacities: Donald Schupak, Dino La Rosa, Carlo Galazzo, Bui Duc Huy, Don Bohn, and Robert Stewart. Donald Schupak was CEO of Maxwell's International, the corporate owner of Maxwell's Plum restaurant, Miller's employer. La Rosa and Galazzo were both general managers of the restaurant; La Rosa was manager from Miller's initial hiring in 1982 until 1985, and Galazzo was manager from 1985 until Miller's third and final termination in 1986. Huy, Bohn, and Stewart were all lower level employees of Maxwell's Plum.

Miller alleges that when she was hired she was told that she would be promoted, but was not because of her sex and age, and that she worked as a manager of the "Terrace Garden" room but was not paid manager's wages. Miller also alleges that La Rosa reduced her hours and subjected her to a hostile work environment because of her sex and age and retaliated against her for complaining of discrimination to La Rosa. Miller further alleges that in retaliation for her having complained to her union about these actions, La Rosa fired her in July, 1984.

After her firing, Miller filed charges with the Equal Employment Opportunity Commission (EEOC) and the National Labor Relations Board (NLRB). NLRB proceedings resulted in Miller's reinstatement as a Maxwell's Plum employee. Thereafter, Miller alleges that Galazzo harassed her and denied her a full time schedule in retaliation for her previous EEOC and NLRB charges. She filed a second NLRB charge on October 30, 1985. Miller alleges that Huy and Bohn gave her notice that she had been fired a second time on November 8, 1985, and that Stewart and Galazzo issued a formal termination notice the next day. Miller also alleges that Galazzo, Bohn, and Stewart refused to write her letters of recommendation in retaliation for her earlier charges and because of sex and age discrimination. These allegations led to a second EEOC charge filed on November 13, 1985.

Sometime in March, 1986, Miller alleges that she was reinstated but then terminated for the third and final time because of retaliatory motives and sex and age discrimination. Miller also alleges that a lawsuit filed by Galazzo against her in March, 1986, constituted malicious prosecution, and she alleges that Galazzo and Schupak denied her unemployment benefits sometime in the Spring of 1986.

After receiving her right-to-sue letter from the EEOC, Miller timely filed an action in the district court on April 24, 1987. Proceeding pro se, Miller was given four opportunities to allege facts that stated a claim against the defendants. After her third amended complaint, the district court finally dismissed Miller's claims on May 18, 1990. The district court then erroneously granted Miller an extension of time to file a motion to alter or amend the judgment. Miller filed her motion on June 27, 1990, and the district court denied it on August 14, 1990.

## II. Standard of Review

The district court dismissed Miller's claims as untimely (barred by statutes of limitations and laches) or for failure to state a claim. In addition, Miller's appeal raises a jurisdictional issue. These are all questions of law or at least mixed questions of law and fact and are reviewed de novo. *See, e.g., Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989) (both failure to state a claim and subject matter jurisdiction are questions of law and are reviewed de novo), *cert. denied*, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990); *In re Hawaii Federal Asbestos Cases*, 871 F.2d 891, 893 (9th Cir. 1989) (statute of limitation reviewed de novo).

## III. Jurisdiction

The first issue we must address is the jurisdictional question raised by Miller's failure to file a timely notice of appeal or motion to extend the appellate filing deadline. *See* Fed.R.App.P. 4(a)(1), (5). The district court entered its judgment on May 23, 1990. Thus, Miller's notice of appeal should have been filed by June 22, 1990, thirty days after the entry of judgment, or a motion to extend the appellate filing deadline should have been filed by July 23, 1990, within thirty days of the expiration of the appellate filing deadline. Miller did not file her notice of appeal until August 30, 1990.

Instead of filing a notice of appeal, Miller filed a motion for an extension of time to request alteration or amendment of the judgment on June 5, 1990. *See* Fed. R.Civ.P. 59(e). Although the district court lacked the authority to do so, *see* Fed. R.Civ.P. 6(b), it issued an order on June 6, 1990, granting the motion. Miller relied on this erroneous ruling and waited until after the resolution of her Rule 59(e) motion before bringing her appeal. If the district court had not granted Miller's motion on June 5, 1990, she still would have had ample time to file her appeal by the June 22, 1990, deadline.

If the notice of appeal is the only deadline Miller has missed, it is clear that Miller is entitled to equitable relief under the "unique circumstances" doctrine recognized in *Barry v. Bowen*, 825 F.2d 1324, 1329 (9th Cir.1987). Even the defendants concede that *Barry* allows equitable tolling of the appellate filing deadline if (1) a district court took action that gave the parties good reason to believe that the appellate filing deadline was extended and (2) the time period for filing an appeal had not yet lapsed at the time of the district court's action. The district court's grant of Miller's motion for an extension of time on June 6, 1990, meets both of the *Barry* criteria for application of the unique circumstances doctrine.

However, the defendants argue that the appellate filing deadline is not the only deadline that Miller missed. When the district court erroneously granted Miller's motion for an extension of time on June 6, 1990, the applicable deadline was extended twenty days, or to June 26, 1990. Miller's Rule 59(e) motion was not filed until June 27, 1990, twenty-one days after the court granted the extension. Thus, the defendants argue that Miller's Rule 59(e) motion was one day late and that this second missed deadline is not excused under the *Barry* doctrine.

However, the defendants overlook the fact that the timeliness of a Rule 59(e) motion hinges on the date of service by the movant, not the date of filing with the district court. *See* Fed.R.Civ.P. 59(e). Service by mail is complete at the time of mailing. Fed.R.Civ.P. 5(b). Miller mailed

her Rule 59(e) motion to the court and to opposing counsel on June 25, 1990, which was before the deadline of the erroneously granted extension. Miller's Rule 59(e) motion was therefore timely under the limits set by the *Barry* doctrine, and we may exercise jurisdiction.

### IV. The Timing of Miller's Claims

#### A. *Willful Conduct and the Statute of Limitations*

■ The district court dismissed Miller's ADEA and EPA claims as time-barred because the court concluded that Miller did not sufficiently allege willful conduct, which would have entitled her to a more generous three-year statute of limitations. *See* 29 U.S.C. § 255(a) (1988) (three-year statute of limitations for willful violations of the EPA); 29 U.S.C. § 626(e) (1988) (incorporating the statutes of limitations under § 255 into the ADEA). We conclude that Miller sufficiently alleged willful violations of the ADEA but not of the EPA. Miller alleged that La Rosa verbally harassed her in an intentional effort to torment her and that La Rosa and Galazzo willfully belittled her because of her age in front of customers and other employees. Moreover, Miller alleged a continuing pattern of ADEA violations that took place after she had filed her EEOC charges and the defendants knew their conduct was being challenged under the law. These allegations are enough, if proven, to establish "reckless disregard" for the law. *See Brock v. Richland Shoe Co.,* 799 F.2d 80, 83 (3d Cir.1986) (quoting *TWA v. Thurston,* 469 U.S. 111, 128, 105 S.Ct. 613, 625, 83 L.Ed.2d 523 (1985)), *aff'd, McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). However, none of the alleged EPA violations was willful, and none of them took place after the EEOC charges were filed.

#### B. *Laches*

■ The district court barred the remainder of Miller's ADEA claims under the equitable defense of laches. This was er-

ror because the doctrine of laches is inapplicable when Congress has provided a statute of limitations to govern the action. *See, e.g., International Tel. & Tel. Corp. v. General Tel. & Elec. Corp.,* 518 F.2d 913, 926 (9th Cir.1975). Because Congress provided a statute of limitations to govern ADEA actions, *see* 29 U.S.C. § 255 (1988), Miller's ADEA claims cannot be barred by laches.

#### C. *Emotional Distress Claims*

■ Miller's claims for emotional distress are barred by the California statute of limitations, which requires an action for emotional distress to be brought within one year of the time the plaintiff knew of the facts essential to the cause of action. *See* Cal.Civ.Proc.Code § 340(3) (West 1982); *Holland v. Bank of Am.,* 673 F.Supp. 1511, 1515 (S.D.Cal.1987) (employee's emotional distress claim barred under section 340(3)'s one-year statute of limitations); *DeRose v. Carswell,* 196 Cal.App.3d 1011, 1015–18, 242 Cal.Rptr. 368, 370–71 (1987). The most recent alleged wrongful act by the defendants—the alleged malicious prosecution—took place in March, 1986. Because this action was filed on April 24, 1987, there is no conduct that Miller has alleged that falls within the one-year statute of limitations.

Miller also alleges that Galazzo denied her unemployment benefits in early 1986, but does not give a specific date on which this denial occurred. However, even if this conduct occurred after April 24, 1986, it is insufficient as a matter of law to state a claim for emotional distress. A denial of unemployment benefits is a common business decision and is simply not conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Restatement (Second) of Torts* § 46 comment d (1965). This is not a close issue; Miller's action for emotional distress is barred by the statute of limitations.[1]

---

**1.** In the alternative, the district court and the defendants provide other meritorious arguments that support the dismissal of Miller's emotional distress claims. We do not address

## V. Individual Liability Under Title VII and the ADEA

Finally, the defendants argue that they have no personal liability under Title VII and the ADEA and that Miller received all of the relief to which she was entitled when she settled her claims with her corporate employer, Maxwell's International. We agree.

 In ruling on this issue, the district court noted that "it is unlikely that Congress intended to impose personal liability on employees," but determined that the text of the statute does not necessarily preclude such individual liability and refused to dismiss Miller's claim on this basis without more definite guidance from this court. The liability schemes under Title VII and the ADEA are essentially the same in aspects relevant to this issue; they both limit civil liability to the employer. *See* 42 U.S.C. § 2000e–5(g) (1988) (Title VII); 29 U.S.C. § 626(b) (1988) (ADEA) (allowing actions against an employer by incorporating the procedures under 29 U.S.C. § 216(b)). Because Congress assessed civil liability only against an employer under Title VII, this court has held that "individual defendants cannot be held liable for back pay." *Padway v. Palches*, 665 F.2d 965, 968 (9th Cir.1982); *Seib v. Elko Motor Inn*, 648 F.Supp. 272, 274 (D.Nev.1986); *Pree v. Stone & Webster Eng'g Corp.*, 607 F.Supp. 945, 950 (D.Nev.1985).

Nevertheless, the interpretation of the statutes to bar individual liability merits discussion because it conflicts with the reasoning of some courts. The term "employer" under the Title VII and the ADEA liability schemes is defined to include any agent of the employer. 42 U.S.C. § 2000e(b); 29 U.S.C. §§ 630(b), 203(d). Thus, some courts have reasoned that supervisory personnel and other agents of the employer are themselves employers for purposes of liability. *See, e.g., Hamilton*

*v. Rodgers*, 791 F.2d 439, 442–43 (5th Cir. 1986) (citing *Jones v. Metropolitan Denver Sewage Disposal Dist.*, 537 F.Supp. 966, 970 (D.Colo.1982)), *limited by, Harvey v. Blake*, 913 F.2d 226, 227–28 (5th Cir.1990); *cf. Barger v. State of Kan.*, 630 F.Supp. 88, 90–92 (D.Kan.1985).

 Although this statutory construction argument is not without merit, we are bound by *Padway*, which, in any event, announced the better rule. As the district court below noted, "[t]he obvious purpose of this [agent] provision was to incorporate respondeat superior liability into the statute." This conclusion is buttressed by the fact that many of the courts that purportedly have found individual liability under the statutes actually have held individuals liable only in their *official* capacities and not in their individual capacities. *See, e.g., Harvey v. Blake*, 913 F.2d at 227–28 & n. 2; *Barger*, 630 F.Supp. at 91–92 (citing *York v. Tennessee Crushed Stone Ass'n*, 684 F.2d 360, 362 (6th Cir.1982), and other authority). Indeed, these courts have joined this circuit in protecting supervisory employees from liability in their individual capacities.

 The statutory scheme itself indicates that Congress did not intend to impose individual liability on employees. Title VII limits liability to employers with fifteen or more employees, 42 U.S.C. § 2000e(b), and the ADEA limits liability to employers with twenty or more employees, 29 U.S.C. § 630(b), in part because Congress did not want to burden small entities with the costs associated with litigating discrimination claims. If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees.

Thus, this court's ruling in *Padway* that individual defendants cannot be held liable for damages under Title VII is good law,[2]

---

these additional arguments because it is clear that the emotional distress claims are barred by the statute of limitations.

**2.** At the time *Padway* was decided, damages were not available under Title VII. Since that time, Congress enacted the Civil Rights Act of

1991, which permits compensatory and punitive damages for intentional discrimination. *See* 42 U.S.C. § 1981a (1992 Supp.). However, in drafting that section, Congress specifically limited the damages available depending upon the size of the respondent *employer*. *See id.* at

and, because of the similarities in the Title VII and ADEA statutory schemes, is applicable to suits under the ADEA.[3] Although one court has determined that this holding "would encourage supervisory personnel to believe that they may violate Title VII with impunity," *Hamilton,* 791 F.2d at 443, the court's reasoning is unsound. No employer will allow supervisory or other personnel to violate Title VII when the employer is liable for the Title VII violation. An employer that has incurred civil damages because one of its employees believes he can violate Title VII with impunity will quickly correct that employee's erroneous belief. This conclusion is supported by the Fifth Circuit's apparent agreement with us that the *Hamilton* holding is suspect. *See Harvey v. Blake,* 913 F.2d at 228 n. 2. There is no reason to stretch the liability of individual employees beyond the respondeat superior principle intended by Congress. Under our interpretation of *Padway* and the Title VII and ADEA statutory schemes, Miller's claims against the defendants in their individual capacities properly were dismissed for failure to state a claim.

## VI. Conclusion

For the reason set forth above, the district court's order is AFFIRMED, but in part on grounds different than those relied upon by the district court. The claims

§ 1981a(b)(3)(A)–(D). Because we think that if Congress had envisioned individual liability under Title VII for compensatory or punitive damages, it would have included *individuals* in this litany of limitations and would have discontinued the exemption for small employers, we resist Judge Fletcher's urging specifically to limit *Padway* to back pay.

3. Judge Fletcher argues that we should refrain from extending the conclusion that individual defendants cannot be held liable for damages under Title VII to suits under the ADEA based on *House v. Cannon Mills Co.,* 713 F.Supp. 159, 160 (M.D.N.C.1988). *House* distinguished between Title VII and the ADEA for two reasons: one, because of the difference in the scope of relief, i.e., at the time *House* was decided, liquidated damages were available for willful violations of the ADEA, *see* 29 U.S.C. § 626(b), but damages were not available under Title VII; and, two, because "the ADEA incorporates the remedies and procedures of the Fair Labor Standards Act ("FLSA") ..." *House,* 713 F.Supp at 160. We do not find the *House* distinction persuasive. First, we note that Congress has

against defendants Bohn, Huy, Stewart, La Rosa, Schupak and Galazzo are dismissed for failure to state a claim.

FLETCHER, Circuit Judge, dissenting:

I respectfully dissent from Part V of the majority opinion that individuals (employees of the employer) cannot be individually liable under *either* Title VII or the ADEA.

In respect to Title VII, the majority relies on *Padway v. Palches,* 665 F.2d 965 (9th Cir.1982), which held that an "employer," not an employee, may be liable for an award of back pay. *Id.* at 968. Part of the rationale in *Padway* was that the employer, not a mere employee (regardless of that employee's supervisory powers), should pay *back wages.* General or punitive damages were not available under Title VII because the statute limited remedies to back pay and injunctive relief. *Id.* Employees, however, can be sued in their official capacities, allowing a successful plaintiff to obtain injunctive relief. *See, e.g., Harvey v. Blake,* 913 F.2d 226, 227–28 (5th Cir.1990); *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1557–59 (11th Cir. 1987); *Canada v. Boyd Group, Inc.,* 809 F.Supp. 771, 779 & n. 3 (D.Nev.1992); *Weiss v. Coca–Cola Bottling Co.,* 772 F.Supp. 407, 410–11 (N.D.Ill.1991).

amended Title VII to allow for both compensatory and punitive damages, and has done so in such a way that indicates that individuals are not liable for those damages under Title VII. *See* note 2, *supra.* This reinforces our statement that "the liability schemes under Title VII and the ADEA are essentially the same in aspects relevant to this issue; they both limit civil liability to the employer." Second, we note that, although the ADEA incorporates *some* provisions of the FLSA, it does not specifically incorporate the provision that defines "employer." *See* 29 U.S.C. § 630(b). Although the *House* court correctly pointed out that the specific and selective incorporation of FLSA enforcement provisions into the ADEA evidences a Congressional intent to adopt existing interpretations of those provisions, we think logically that adoption must be limited to those provisions that specifically are incorporated. Accordingly, we find *House* unpersuasive for our purposes, and we resist Judge Fletcher's suggestion that we apply it in this case.

I am concerned that the majority's overbroad language may unnecessarily cloud decisionmaking under the Civil Rights Act of 1991, which now permits compensatory and punitive damages for intentional discrimination. 42 U.S.C.A. § 1981a (1992 Supp.). This significant revision may permit suits against individuals for compensatory and punitive damages where the discrimination was intentional. *But see id.* at § 1981a(b)(3)(A)–(D) (establishing compensatory damage sum limitations by categories determined by "respondent[s']" number of employees). What can be said, and all that should be said, is that under Title VII prior to its amendment, an employee could not be held individually liable for back pay.

As for individual employee liability under the ADEA, I do not believe Miller's claims can be dismissed on the basis that "[t]he liability schemes under Title VII and the ADEA are essentially the same in aspects relevant to this issue." Maj.Op. at 587. Notwithstanding the many similarities between the two statutory schemes, at the time of the enactment of the ADEA its "scope of relief [wa]s much broader" than that afforded by Title VII.[1] *See House v. Cannon Mills Co.,* 713 F.Supp. 159, 160 (M.D.N.C.1988). The difference in the scope of relief, in the *House* court's view, foreclosed reliance on *Padway* in determining individual liability under the ADEA. *Id.*

Perhaps a more significant difference between the two statutory regimes is that "the ADEA incorporates the remedies and procedures of the Fair Labor Standards Act ("FSLA"), which differ from those under Title VII." *See id.* (citing, *inter alia, Lorillard v. Pons,* 434 U.S. 575, 582, 98 S.Ct. 866, 871, 55 L.Ed.2d 40 (1978)). The Supreme Court in *Lorillard* noted that it

was Congress' selectivity "in incorporating provisions and in modifying certain FLSA practices [that] strongly suggests that but for those changes Congress expressly made, *it intended to incorporate fully the remedies and procedures of the FLSA." Lorillard,* 434 U.S. at 582, 98 S.Ct. at 871 (emphasis added). There is no question that an individual can be personally liable as an employer under the FLSA; adverse employment actions attributable to individuals as a consequence of their authority over employment decisions can lead to individual liability where those actions violate the FLSA. *House,* 713 F.Supp. at 160–61 (citing cases). The same result should apply to actions brought under the ADEA.

In *House,* the key inquiry centered on whether the employer's agents "had authority and discretion over [p]laintiff's discharge for allegedly discriminatory reasons." *Id.* at 161; *see also Wanamaker v. Columbian Rope Co.,* 740 F.Supp. 127, 135 (N.D.N.Y.1990) (individual liability claim under ADEA possible where plaintiff contended that individual defendants " 'participated in the decision making process that forms the basis of the discrimination' "). According to the court in *House,* "the clear import of the statutory language [in the ADEA], including the incorporation of the FLSA provisions and their accompanying case law, is imposition of personal liability on all 'employers,' " including supervisors. *House,* 713 F.Supp. at 161–62.

We should not dismiss *House* as simply a district court decision from another circuit with little persuasive force in our circuit. It is a thorough and well-reasoned opinion. Judge Posner, in *Shager v. Upjohn Co.,* 913 F.2d 398, 404 (7th Cir.1990), has cited it with approval.[2] I conclude Miller should not be precluded from bringing an ADEA claim against those supervisors who took

---

1. 29 U.S.C. § 626(b) provides as a remedy "liquidated damages" "in cases of willful violations." As discussed above, the 1991 amendments to Title VII may or may not have brought Title VII's scope of relief nearer to that available under the ADEA. If they did not, as appears likely given the construction of the limitations categories, ADEA still affords more expansive relief possibilities.

2. The point that Posner makes is that although both Title VII and the ADEA define "employer" to include "agent of employer," there are limits to the imposition of employer liability under respondeat superior. Outrageous conduct by one employee to another unknown to the employer should not automatically be ascribed to the employer. *Shager,* 913 F.2d at 404.

part in the termination decisions; those supervisors can be held liable, in their individual capacities, if their actions violated the ADEA. I would reverse.