Wanda G. MIRANDA, Plaintiff,

v.

**DELOITTE LLP, Deloitte Tax LLP, Deloitte & Touche LLP, Deloitte Services LLP, Francisco A. Castillo–Penne, Ricardo Villate–Prieto, Michelle Corretjer–Catalan, John Doe, Richard Doe, ABC, DEF Insurance Companies, Defendants.**

Civil No. 12–1271 (FAB).

United States District Court, D. Puerto Rico.

Oct. 10, 2013.

Maria I. Santos–Rivera, Maria I. Santos Law Office, San Juan, PR, for Plaintiff.

Carl E. Schuster, Mariela Rexach–Rexach, Ana Beatriz Rivera–Beltran, Schuster & Aguilo LLP, San Juan, PR, for Defendants.

## MEMORANDUM AND ORDER

BESOSA, District Judge.

Before the Court are the motion and memorandum of law for partial summary judgment filed by defendants Ricardo Villate–Prieto ("Villate") and Michelle Corretjer–Catalan ("Corretjer"), (Dockets 189 & 190); plaintiff Wanda G. Miranda ("Miranda")'s memorandum in opposition, (Docket 229); and defendants' reply, (Docket 276). For the reasons discussed below, the Court **GRANTS** defendants Corretjer's and Villate's motion.

## I. Standard

The Court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). A fact is "material" if it has the potential to "affect the outcome of the suit under the governing law." *Id.* A dispute is "genuine" when it "could be resolved in favor of either party." *Calero–Cerezo v. U.S. Dep't. of Justice,* 355 F.3d 6, 19 (1st Cir.2004). The party moving for summary judgment has the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact" with definite and competent evidence. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994). It must identify "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any'" which support its motion. *Id.* (citing Fed. R.Civ.P. 56(c)). Once a properly supported motion has been presented, the burden shifts to the non-moving party "to demonstrate that a trier of fact reasonably could find in [its] favor." *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir.2000) (internal citation omitted).

## II. ADEA Claim Against Defendants Corretjer and Villate In Their Personal Capacities

■ Plaintiff brings an ADEA claim against defendants Villate and Corretjer in their personal capacities. Although the First Circuit Court of Appeals has not squarely addressed the issue of individual

liability under the ADEA, courts within the circuit have recently held that personal liability under the ADEA does not exist. *Pabon–Ramirez v. MMM Health Care,* 2013 WL 1797041, 4–5, 2013 U.S. Dist. LEXIS 61794, 11–13 (D.P.R. Apr. 29, 2013) (Fuste, J.); *Edwards v. Bertucci's Italian Rest.,* 2013 WL 2096244, 6, 2013 U.S. Dist. LEXIS 67710, 19 (D.Mass. May 13, 2013). In its memorandum and order dated February 8, 2013, the Court acknowledged that a "narrow exception" for personal liability may potentially apply to ADEA claims against corporate officers and managers who have the authority to manage certain aspects of the business' day-to-day operations, but that "[t]he issue may be revisited ... at the summary judgment stage." *Miranda v. Deloitte LLP,* 922 F.Supp.2d 210, 219–221 (D.P.R.2013). Revisiting the issue, and upon further review of case precedent on the matter, the Court now holds that extending the narrow exception to ADEA cases would be inappropriate as a matter of law.

## A. The First Circuit Court of Appeals' Stance

In 2009, the First Circuit Court of Appeals took the "opportunity to enter the thicket of determining" whether individual liability exists under Title VII, *Fantini v. Salem State College,* 557 F.3d 22, 28 (1st Cir.2009), which is the ADEA's "closest statutory kin." *Id.* at 30 (citing *Lissau v. S. Food Serv.,* 159 F.3d 177, 180 (4th Cir. 1998)). The Court of Appeals' opinion, written by District Judge Daniel R. Dominguez, who sat by designation, attacked the individual liability issue by first identifying Title VII's definition of "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person." *Id.* at 28 (citing 42 U.S.C. § 2000e(b)). Faced with the question of whether employees may be held liable as "agents" of the employing entity, the Court of Appeals explained that it must "determine whether Title VII[,] by including in the definition of employer, 'any agent of such a person', intended for said 'agents' to be subject to liability for engaging in the proscribed discriminatory acts." *Id.* at 29. The Court of Appeals recognized that "[m]ost circuit courts have held that no personal liability can be attached to agents under Title VII," and cited extensive precedent demonstrating that Title VII's language and statutory scheme *do not* support an inference of congressional intent to impose individual liability on employees. *Id.* at 29–31 (identifying Title VII's exemption for small employers and updates to Title VII's remedial scheme as reasons demonstrating Congress' intention not to subject individual employees to liability); *id.* at 30 ("After reviewing the analysis fashioned by all of our sister circuits, we are persuaded by their analysis and therefore take this opportunity to determine as they have that there is no individual employee liability under Title VII.").

In 2011, the First Circuit Court of Appeals again spoke on the issue of whether individuals are subject to liability under a federal statute prohibiting discrimination in the workplace—this time the Americans with Disabilities Act ("ADA"). *See Roman–Oliveras v. P.R. Elec. Power Auth.,* 655 F.3d 43, 50–52 (1st Cir.2011). Acknowledging that neither the First Circuit Court of Appeals nor the Supreme Court had explicitly rejected individual liability under the ADA at that time, the First Circuit Court of Appeals pointed out that a number of other circuits had taken that view. *Id.* at 50. It then explained that "the logic of *Fantini* is compelling here," and analyzed the issue of ADA individual liability pursuant to the *Fantini* framework. *Id.* at 51. First, it noted that the

statutory scheme and language of Title I of the ADA and Title VII "are identical in many respects" because they direct their prohibitions to "employers" and the ADA's definition of employer mirrors Title VII's. *Id.* Second, it recognized the exemption for small employers under both statutes and reiterated its *Fantini* conclusion that the "any agent" language in the "employer" definition "does not connote individual liability, but simply establishes a limit on an employer's liability for its employees' actions." *Id.* Third, it noted that the amendments made to Title VII's remedial scheme—which the First Circuit Court of Appeals concluded did not contemplate individual liability—also applied to the ADA. *Id.* at 51–52. In light of the parallel statutory language and identical amendments to the statutes' remedial provisions, the First Circuit Court of Appeals concluded that "Congress intended that these two employment discrimination provisions be treated uniformly." *Id.* at 52. Seeing "no basis for reaching a different outcome," it held that the ADA does not impose individual liability on employees. *Id.*

### B. Precedent on the Issue of Individual Liability Under the ADA

■ Although the First Circuit Court of Appeals has never explicitly held that individual liability is precluded under the ADA, a number of other circuits hold that view. *See, e.g., Martin v. Chem. Bank,* 129 F.3d 114 (2d Cir.1997) (finding no individual liability under the ADA because the Second Circuit Court of Appeals had already rejected individual liability under Title VII, and "analysis of claims raised under one of these statutes has generally been informed by cases brought under the other"), *aff'd* 1997 U.S.App. LEXIS 37092 (2d Cir.1997); *Smith v. Lomax,* 45 F.3d 402, 403–04 & n. 4 (11th Cir.1995) (holding that employees in their individual capacities cannot be considered an "employer" pursuant to the ADEA or Title VII); *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 510 (4th Cir.1994) (concluding that the ADEA limits civil liability to the employer, and an employee is therefore not a proper defendant); *Miller v. Maxwell's Intern., Inc.,* 991 F.2d 583, 587–88 (9th Cir.1993) ("[T]his court's ruling . . . that individual defendants cannot be held liable for damages under Title VII is good law, and because of the similarities in the Title VII and ADEA statutory schemes, is applicable to suits under the ADEA.")

■ The Court also agrees with sister courts that "find this to be the most plausible reading of the statute." *See, e.g., Pabon–Ramirez,* 2013 WL 1797041 at 4, 2013 U.S. Dist. LEXIS 61794 at 12. The statutory scheme and language of the ADEA and Title VII are identical in many respects. Both direct their prohibitions to "employers,"[1] and they define "employer" nearly identically. *Compare* 42 U.S.C. § 2000e(b)[2] (Title VII) and 29 U.S.C. § 630(b)[3] (ADEA); *see also Fantini,* 557 F.3d at 29–30 (citing numerous other circuit courts of appeals that regard the ADEA and Title VII's employer definition

---

1. Both the ADEA and Title VII provide that discriminatory practices are unlawful "for an employer." 29 U.S.C. § 623(a); 42 U.S.C. § 2000e–2(a).

2. Section 2000e(b) of Title VII provides, in pertinent part: "The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person."

3. Section 630(b) of the ADEA provides, in pertinent part: "The term 'employer' means a person engaged in an industry affecting commerce who has twenty or more employees. . . . The term also means (1) any agent of such a person."

as "essentially the same" and "essentially identical"). Just as with the ADA and Title VII, the ADEA limits the liability of small employers, *Fantini*, 557 F.3d at 30 ("Like the ADEA, Title VII exempts small employers[.]") (internal citation omitted), and exempts them from the burden of costs associated with litigating discrimination claims. ·See *Roman–Oliveras*, 655 F.3d at 51 (quoting *Fantini*, 557 F.3d at 29 and *Miller*, 991 F.2d at 587). As the First Circuit Court of Appeals has twice emphasized, "If Congress decided to protect small entities with limited resources from liability, **it is inconceivable that Congress intended to allow civil liability to run against individual employees.**" *Fantini*, 557 F.3d at 29 (internal citation omitted); *Roman–Oliveras*, 655 F.3d at 51 (internal citation omitted) (emphasis added). Accordingly, the "any agent" language in the ADEA's employer definition "does not connote individual liability, but simply establishes a limit on an employer's liability for its employees' actions." *Roman–Oliveras*, 655 F.3d at 51 (citing *Fantini*, 557 F.3d at 30) (internal quotations and citation omitted). It is true that, unlike in the cases of Title VII and the ADA, Congress' 1991 amendments did not apply to the ADEA.[4] The very fact that Congress amended Title VII in a way that indicates individuals are not liable for those damages,[5] however, reinforces the conclusion that "the liability schemes under Title VII and the ADEA

are essentially the same in aspects relevant to this issue; they both limit civil liability to the employer." *Miller*, 991 F.2d at 588 n. 3.

■ The Court recognizes a case in this district that relies on the ADEA's similarity to the FLSA instead of Title VII to find that a "narrow exception" to the general rule against individual liability potentially exists. See *Rivera–Tirado v. Autoridad de Energia Electrica*, 663 F.Supp.2d 36 (D.P.R.2009) (Dominguez, J.); *see also Edwards v. Bertucci's Italian Rest.*, 2013 WL 2096244, 6, 2013 U.S. Dist. LEXIS 67710, 19 (D.Mass. May 13, 2013) ("The First Circuit has carved out a narrow exception from the general rule against individual liability under the ADEA") (citing *Elaine L. Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 34 (1st Cir.2007)). In *Rivera–Tirado*, the court cited former . district judge Hector Laffitte's opinion that a "special relationship" exists between the ADEA and the FLSA and is pertinent to the issue of individual liability under the ADEA. 663 F.Supp.2d at 39–41 (citing *Flamand v. Am. Int'l Grp.*, 876 F.Supp. 356, 362 (D.P.R.1994) (Laffitte, J.)) ("In determining whether or not a supervisor is liable under [the] ADEA as an 'employer,' courts must not lose sight of the statutory fact that violations of [the] ADEA are considered violations of the [FLSA] . . . and that [the] ADEA explicitly incorporates the re-

---

4. Before the 1991 amendments, a difference in the scope of relief between Title VII and ADEA claims existed. Liquidated damages were available for willful violations of the ADEA, but damages were not available under Title VII. *Miller*, 991 F.2d at 588 n. 3. When Congress enacted the Civil Rights Act of 1991, it permitted compensatory and punitive damages for intentional discrimination under Title VII.

5. As the Ninth Circuit Court of Appeals pointed out, in drafting the section permitting compensatory and punitive damages for in-

tentional discrimination, "Congress specifically limited the damages available depending upon the size of the respondent *employer*. [See 42 U.S.C. § 1981a(b)(3)(A)-(D) (1992 Supp.) ] . . . [W]e think that if Congress had envisioned individual liability under Title VII for compensatory or punitive damages, it would have included *individuals* in this litany of limitations and would have discontinued the exemption for small employers. . . ." *Miller*, 991 F.2d at 587 n. 2 (emphasis in original).

medial scheme set forth in sections ... of [the] FLSA."). Former judge Laffitte recognized that the "ADEA's special relationship with [the] FLSA underscores the actuality that [the] ADEA is a labor law, a law dealing with employer-employee relationships, particularly as it pertains to enforcement and remedial actions," and ultimately held that individual liability does not exist. *Flamand*, 876 F.Supp. at 363. Acknowledging that special relationship, the *Rivera–Tirado* court claimed that supervisory liability under the ADEA "potentially us[es] the FLSA model" instead of the Title VII model, 663 F.Supp.2d at 39,[6] but then perceived an exception to the general rule against supervisory liability under the FLSA "that potentially may be adopted by the court under the ADEA." [7] 663 F.Supp.2d at 40.

Persuaded by the Ninth Circuit Court of Appeals' explicit rejection of the FLSA line of reasoning, as well as the Fourth Circuit Court of Appeals' indication that the ADEA's scope of liability stems from the statute's "employer" definition, the Court finds the FLSA's narrow exception inapplicable in the ADEA arena. In *Miller*, the Ninth Circuit Court of Appeals found the ADEA's "employer" provision to be more pertinent to the question of individual liability than the statute's remedial and procedural provisions reflecting the FLSA. 991 F.2d at 588 n. 3. Because Congress did not choose to incorporate the FLSA's "employer" provision specifically—but rather mirrored the ADEA's "employer" definition upon that of Title VII—the Ninth Circuit Court of Appeals found a case endorsing the FLSA approach to be inapposite to the question of whether ADEA individual liability exists. *Id.* ("[T]he ADEA incorporates *some* provisions of the FLSA, [but] it does not specifically incorporate the provision that defines 'employer.' Although ... the specific and selective incorporation of FLSA enforcement provisions into the ADEA evidences a Congressional intent to adopt existing interpretations of those provisions, we think logically that adoption must be limited to those provisions that specifically are incorporated."). The Fourth Circuit Court of Appeals in *Birkbeck* focused on the ADEA's definition of employer—not its enforcement or remedial provisions—to address whether individual liability exists under the statute. 30 F.3d at 510–511. Naming Title VII as "the ADEA's closest statutory kin," and regarding the employer definition in both statutes "as an unremarkable expression of *respondeat superior*," the Court found that the ADEA limits liability to the employer. *Id.* The First Circuit Court of Appeals' approach to determining individual liability under Title VII and the ADA is both consistent with those cases and supports the theory that the matter of personal liability takes root in the interpretation of the statute's "employer" definition-not of its enforcement or remedial provisions. *See Roman–Oliveras*, 655 F.3d at 50–52; *Fantini*, 557 F.3d at 28–32.

■ Because the definition of "employer" under the ADEA mirrors Title VII's language and not that of the FLSA, the issue of individual liability is better interpreted pursuant to Title VII precedent. Given that the First Circuit Court of Ap-

---

6. The court in *Rivera–Tirado* recognized, however, that "[i]n the instant case under ADEA[,] should the court follow the Title VII analysis[,] there is no supervisory liability following the model of *Fantini*." 663 F.Supp.2d at 40.

7. Pursuant to that exception, corporate officers with significant owner interests and operational control over significant aspects of the corporation may not avoid personal liability for violations of the FLSA. *Rivera–Tirado*, 663 F.Supp.2d at 40 (citing *Chao*, 493 F.3d at 33–34).

peals has conclusively determined that individuals may not be held personally liable under Title VII, the same must be true under the ADEA. Accordingly, plaintiff's ADEA claims against defendants Corretjer and Villate in their personal capacities do not survive.

## III. Conclusion

For the reasons stated above, the Court finds that no individual liability under the ADEA exists. Accordingly, plaintiff's ADEA claims against defendants Corretjer and Villate in their personal capacities are **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**